HEARD NOVEMBER TERM, 1872.

## MEANS *vs.* FEASTER.

In an action for equitable relief, tried by the Judge without the aid of a jury, his conclusions upon doubtful questions of fact will not be overruled by the appellate Court, though that Court might not have reached the same conclusions he did.
Fraud is a mixed question of law and fact.
Where evidence is received without objection its admissibility cannot be made a ground of exception.
Where a conveyance of land for valuable consideration is impeached by creditors of the grantor for fraud, it is not enough to show a fraudulent intent on his part, but the grantee's knowledge of such intent may be inferred from the circumstances.
The Statute of Limitations runs only from notice or discovery of the fraud. Notice of the deed and its contents is not enough, nor is it enough, it seems, to show notice to a Commissioner in Equity, in whose name the debt was contracted for the benefit of the real creditors.

BEFORE THOMAS, J., AT FAIRFIELD, AUGUST TERM, 1872.

Action by Mary H. Means, B. Hart Means, Julius R. Polenitz and Claudius M. Polenitz, against Trezvan D. Feaster, Julia A. Coleman, M. Narcissa Feaster and Elbert H. Feaster. Annett G. Feaster was also a plaintiff, but when the case came on for trial she acknowledged satisfaction of her claim, and the complaint was amended by striking out her name as plaintiff.

The action was commenced in October, 1870, and the complaint alleged—

That, on the 18th of September, 1866, one Andrew Feaster, now deceased, confessed a judgment to S. G. McClanaghan and John C.

Feaster, for the use of Annett G. Feaster, for the sum of three
thousand four hundred and ninety-nine 31-100 dollars, and that
execution thereon was issued and lodged in the offices of the
Sheriffs of Greenville and Fairfield Counties; that Henry A.
Gaillard, Commissioner in Equity for Fairfield District, on the 22d
day of July, 1868, suing for the benefit of all the plaintiffs, except
the said Annett G. Feaster, obtained a money decree in the Court
of Equity for Fairfield District against the said Andrew Feaster
and others, for the sum of six thousand seven hundred and thirty-
nine dollars, and that execution was issued thereon and lodged in
the office of the Sheriff of Fairfield County on 10th day of
August, 1868; that certain deeds of conveyance, executed and
delivered to the defendants in January and February, 1866, by the
said Andrew Feaster, before the said judgment and decree were
obtained, of certain tracts of land situated in Fairfield County,
particularly described in the complaint, and purporting to be upon
valuable consideration, expressed in said deeds, respectively, as paid,
were executed and delivered without adequate consideration, and
with the avowed purpose of hindering and preventing the plaintiffs
in and from collecting their claims, and are, therefore, fraudulent;
that by reason of the said conveyances the plaintiffs have been
defrauded in the collection of their said debts; and that there is no
other property of the said Andrew Feaster which can be subjected
by the plaintiffs to the payment of their claims. Wherefore the
plaintiffs demand judgment that said conveyances be set aside and
declared null and void.

All the defendants answered separately except the defendants,
Julia A. Coleman and M. Narcissa Feaster, who joined in their
answer, and all deny each and every allegation of the complaint,
whereby the plaintiffs seek to set aside their respective deeds of
conveyance as fraudulent, and as having been made without
adequate consideration, and allege that their respective deeds of
conveyance were executed and delivered to them by their father,
the said Andrew Feaster, in good faith, and for full and valid con-
sideration, amounting even to more than the sums therein respec-
tively expressed as paid, and are free from, and unaffected by,
fraud upon the rights of the plaintiffs, so far as the knowledge and
acts of the defendants are concerned; that the defendants bargained
for their respective tracts of land at the stipulated price of five
dollars per acre, and upon this valuation the sums expressed as the

consideration in said deeds were made up. The defendant, Treze-
van D. Feaster, alleges that he gave up to the said Andrew
Feaster, at the time his deeds were executed and delivered to him, in
payment for the tracts of lands conveyed to him and some personal
property which he bought from said Andrew Feaster at the same
time, several sealed notes which he held on him and which had
been given by the said Andrew Feaster for the services and labor
of said defendant and two negroes belonging to him, and for money
lent before the late war, amounting to at least seven thousand dol-
lars. The defendants, Julia A. Coleman and M. Narcissa Feaster,
allege, in their answer, that the said Julia A. Coleman delivered up
to the said Andrew Feaster, in payment for the land conveyed to
herself and said M. Narcissa Feaster, at the time of the execution
of the deed, an agreement in writing signed by the said Andrew
Feaster, dated 27th December, 1862, whereby the said Andrew
Feaster undertook and agreed to account for and pay to the said
Julia A. Coleman and Lewis A. G. Coleman and R. H. Coleman,
Jr., her two minor children, as the heirs of Robert H. Coleman,
deceased, the sum of two thousand three hundred and ninety dollars
and seventy-five cents, with interest thereon from the first day of
January, 1863, for personal property taken at an appraised valua-
tion, made on the 30th October, 1862, by three disinterested per-
sons, and also the further sum of five hundred and thirty-two dol-
lars and ninety-six cents, with interest thereon from the 30th Octo-
ber, 1862, for sundry notes of one Elizabeth Coleman, which were
taken and received by the said Andrew Feaster, with the other
personal property belonging to the said Julia A. Coleman and her
said minor children ; that said Julia A. Coleman, in behalf of
herself and said minor children, delivered up to the said Andrew
Feaster the said obligation or instrument of writing, and thereby
released him from accounting for and paying to herself and chil-
dren the said sums of money and interest as aforesaid, in consider-
ation of the conveyance of said tract of land ; and that the name of
the defendant, M. Narcissa Feaster, was inserted in said deed, at
the request of the defendant, Julia A. Coleman, through the love
and affection she bore her as a sister. The defendant, Elbert H.
Feaster, alleges that the said Andrew Feaster, in consideration of
the tract of land conveyed to him, and in payment therefor, was-
released from accounting for and from the payment of one thousand
and thirty dollars and sixty-three cents, and interest thereon, which

he had received from Mrs. Elizabeth Teague, the mother of Caroline M. Feaster, the wife of said defendant, for the benefit of the said Caroline M. Feaster.

All the defendants, for a second defense, plead the Statute of Limitations, formally, alleging that no cause or right of action, by reason of fraud in the execution of said deeds of conveyance (if there was any such fraud) accrued to S. G. McClanaghan and John C. Feaster and Henry A. Gaillard, late Commissioner in Equity for Fairfield County, or his predecessors or successors in office, or to the plaintiffs, by virtue of their interests in the judgment obtained by the said S. G. McClanaghan and John C. Feaster and the decree obtained by the said Henry A. Gaillard, as Commissioner as aforesaid, as alleged in the complaint, or by virtue of their interests in the causes of action upon which said judgment and decree were founded, at any time within the space of four years before the commencement of this action ; but if any cause of action, by reason of fraud in the execution of said deeds of conveyance ever accrued to the said S. G. McClanaghan and John C. Feaster, and the said Henry A. Gaillard, as Commissioner as aforesaid, or his predecessors or successors in office, or to the plaintiffs, by virtue of their interests in the judgment and decree aforesaid, or the causes of action upon which said judgment and decree were founded, the same accrued more than four years before the commencement of this action.

The complaint was amended by alleging that the fraud was not discovered until within four years before the action was commenced.

It was proved at the trial that the decree for $6,739, mentioned in the complaint, was founded on a bond and mortgage to Isaac H. Means, Commissioner in Equity for Fairfield District, dated February 5th, 1865, and that it was rendered in a suit for foreclosure of the mortgage commenced early in 1867, by Henry G. Gaillard, as Commissioner in Equity and successor in office of Isaac H. Means. The deeds of conveyance mentioned in the pleadings were given in evidence, and it was further proved that they included all the lands of the grantor ; that Andrew Feaster resided in Fairfield District until the year 1867, when he removed to Florida, where he died in the year 1868. The plaintiff then gave evidence tending to show that the deeds were executed with the intent to defraud the plaintiffs and defeat them in the collection of their claim ; that de-

fendants knew of the fraudulent intent, and that plaintiffs did not discover the fraud until a short time before the action was commenced .Annette Feaster, a witness for the plaintiffs, testified, without objection, that she was at the residence of Andrew Feaster in the year 1866. She then heard of the conveyances. "He said he had sold his farm to Trezvan ; that he had done this to get rid of the Means claim, to keep from being broken up in his old age. He said they were then suing, or about to sue him. He said he had never given any thing to Narcissa, and that she had to make it appear that she had bought it. That he had to do it in the way of a sale to all these parties to make it stand in law, as it would not have been good if he had made a deed of gift. All the defendants were living in the house with the old man, or near to him, and are his children. He talked these matters over with me several times. He was living on the plantation. The defendants were frequently passing in and out during the conversation, and ought to have heard what was said, but witness does not know whether they did or not."

For the defendants evidence was given tending to prove that the deeds were executed for full and valuable consideration ; and that defendants had no knowledge of any fraudulent intent, if any such existed.

His Honor the presiding Judge made and filed the following conclusions of fact and law, and decree :

I, the said Judge, do find as matter of fact :

I. That the conveyances set forth in the complaint were not made *bona fide* and upon good consideration, and that they were made for the purpose and intent of delaying, hindering and defrauding creditors.

II. That, considering the time, place, relationship of the parties, and all the circumstances attending the transaction, the conveyees must be held to have had a knowledge of the above purpose and intent.

III. That the plaintiffs, Mary H. Means, B. Hart Means, Julius R. Polenitz and Claudia M. Polenitz, did not discover the fraud attending the said conveyances until within four years before the bringing of their action.

And as matter of law, I find :

I. That the plea of the Statute of Limitations must be overruled:

II. That said conveyances are void 'as to the plaintiffs and other creditors in like position.

I therefore adjudge and decree:

I. That the plea of the Statute of Limitations be, and is hereby, overruled.

II. That the conveyances mentioned in the complaint are hereby adjudged and decreed to be void, and are hereby set aside and annulled.

To which aforesaid findings of fact and conclusions of law, and the decree or judgment thereupon, the defendants duly excepted, separately, to each and every part thereof, as follows:

I. To the first of said findings and conclusions of fact:

1. In that it is not found, according to the evidence and the law in the case, that the conveyances set forth in the complaint were made *bona fide.*

2. In that it is not found that said conveyances were made upon good and valuable and adequate consideration.

3. In that it is not found that there was, at most, only a legal preference of creditors in the transactions between the defendants and Andrew Feaster, the conveyor.

II. To the second of said findings and conclusions of fact:

In that it is not found that, if there was any fraud connected with said conveyances on the part of the conveyor, there was no proof that the defendants, the conveyees, were parties thereto, or had a knowledge thereof.

III. To the third of said findings and conclusions of fact:

1. In that it is not found that said deeds of conveyance were duly recorded on the 8th of March, 1866, in the proper office of registration, over four years before the commencement of this action.

2. In that it is not found that Isaac H. Means, to whom, as Commissioner in Equity, and his successors in office, was payable the bond upon which the decree in the case of H. A. Gaillard, Commissioner in Equity, *vs.* Jacob Feaster, Andrew Feaster, and Edith D. Lyles, was founded, was Commissioner in Equity at the time of the execution of said conveyances, and for five or six months thereafter, and lived in the neighborhood of the lands described therein, and of the conveyor and conveyees.

3. In that it is not found that said Commissioner in Equity and his successors in office, from all the circumstances of the transaction, must have had such knowledge as would put a creditor upon inquiry to ascertain if there was any fraud connected with said conveyances.

IV. To the first of said conclusions of law:

1. In that it is not decided that the recording of the said deeds of conveyance within the statutory period imparted the notice necessary to put the creditors of the conveyor upon inquiry, and the Statute of Limitations ran against them from that date.

2. In that it is not decided that, where a trustee has the legal title, or may prosecute a suit in behalf of his *cestui que trust*, and is barred by the Statute of Limitations, the *cestui que trust*, even though an infant, will also be barred.

3. In that it is not decided that the Commissioner in Equity, or his legal successor in office, whose duty it was to receive and collect the money on the bond and the decree thereon for the plaintiffs, was such trustee.

4. In that it is not decided that the plea of the Statute of Limitations must therefore be sustained.

V. To the second of said conclusions of law:

In that it is not decided, upon the evidence and the law, in this case, that said deeds of conveyance are good and valid as to the plaintiffs and all other creditors in like position.

VI. To the first part of said decree or judgment:

In that it is not adjudged and decreed that the plea of the Statute of Limitations be sustained.

VII. To the second part of said decree or judgment:

In that it is not adjudged and decreed that the complaint be dismissed on its merits.

The defendants appealed.

*McCants & Douglass,* for appellants.

*Rion & Hamilton,* contra.

April 29, 1873. The opinion of the Court was delivered by

WRIGHT, A. J. The case, being strictly one for equitable relief, was tried by the Judge. He did not think it necessary to call a

jury to his aid, nor did either of the parties ask that the issues of fact might be decided through the intervention of one. To sustain the judgment of the Circuit Court, it is not necessary for the respondent to show that the testimony to that end was conclusive, or that this Court would have reached the same result. If there was evidence sufficient to warrant the judgment of the Court below on the facts we should not overrule it, even if a close and careful examination might lead us to believe that the weight was the other way. The judgment of the Court on the facts must be accepted and treated as the conclusion of a tribunal not only vested with the power to pass upon, but, by reason of its position, having a better opportunity to judge of the credibility of the witnesses through whose testimony they are received. In a case on the equity side of the Court we would feel ourselves at greater liberty to review the facts upon which the decree rested than we would be when they have been passed upon through the verdict of a jury. Over the last our jurisdiction is of a different and more limited character. It is proper to separate the questions which we consider involve facts from those of law. Whether the appellants had knowledge of the purpose and intent of the execution of the conveyances, was a fact to be collected from the whole evidence. It is not, by any means, however, certain that, so far as they may be regarded void under the Statute of 13 Eliz., C. 5, as made to delay, hinder and defraud creditors, the Judge was right in supposing that question was to be solved as one purely of fact.

Fraud is a mixed question of law and fact, and the mode by which its prevalence is ascertained in Courts of justice depends on well recognized and established principles.

Exception is taken to the admission of the declarations of Andrew Feaster, testified to by the witness, Annette Feaster.

It is enough, as to their mere admissibility in this case, to say that they were introduced without objection. How far such declarations may be competent, would depend entirely on the time they were made. If, at the time of the conveyance, when the grantor had title, or at a period when they can be held to constitute part of the *res gestœ*, they may be received.—*Heard* vs. *Halford*, 5 Rich. Eq., 128; *Kittles* vs. *Kittles*, 4 Rich., 422; *Renwick* vs. *Renwick*, 9 Rich., 50.

As they were introduced without objection, any consideration of their mere competency is precluded. The weight that was to attach

to them, as affecting the mind of the Judge, was a matter entirely for him, increasing or weakening, the one way or the other, the impression made on him by the whole of the testimony. Even when competent, they should be received with caution.

The appellants contend that, as matters of law, it is not alone sufficient to show an actual fraudulent intent, on the part of the grantor, to hinder, delay and defraud creditors, "but that the purchasers, the grantees, were parties to the fraud, or had such a knowledge thereof as would make them equally participants therein or parties thereto." "Whether a conveyance be fraudulent or not, is declared by the Statute to depend upon its being made" upon "good consideration, and *bona fide*." It must "be both."—Kerr on Fraud, 199. No matter how adequate the consideration, if it be not *bona fide*, it wants one of the main incidents to validity. It would be going very far to say that although a deed is executed on full consideration, yet if there be a fraudulent design by the grantor, it will nevertheless be void, although the grantee may be innocent of any wrong intent, and in no way cognizant of any wrong motive.

It is not required that the *mala fides* of the transaction should be established by positive proof. The complicity of both parties may be inferred from the circumstances. Here the whole property of the father was conveyed to his children by separate deeds at the same time, pending suits by creditors. No complete and entire surrender of the property made—the children, or some of them, living with the grantor. These were among the facts from which the Judge might properly conclude that it was but a concocted scheme for the defeat of creditors.

The exception to the plea in analogy to the Statute of Limitations cannot defeat it. The Statute runs for four years from notice, or discovery, of the fraud, and the *onus* of shewing want of notice is not on the plaintiff. The defendant, in order to avail himself of the Statute, must show that the plaintiff had notice four years before the filing of the bill.—*Shannon* vs. *White*, 6 Rich. Eq., 96 ; *Godbold* vs. *Lambert*, 8 Rich. Eq., 155. The recording of the deeds is only notice of their execution and the contents.

In *Godbold* vs. *Lambert* the Court said that the proposition that notice of a deed is notice of the fraud " cannot be sustained—there is no rationality about it." It is not necessary to consider whether any notice of the fraud by the Commissioner, the officer of the Court, to whom, in his official capacity, the bond was payable, could

affect the parties interested in it, for there is nothing in the evidence to show any such notice.

Even if it had been proved, it is not easy to perceive how it could have operated to defeat the rights of those for whose benefit the bond was held.

The motion is dismissed.

*Moses*, C. J., and *Willard*, A. J., concurred.