478 S.E.2d 45

**FUTURE GROUP, II; Heffron, Ingle, McDowell & Cooper, Inc.; Michael Runey; and The Five R's, a South Carolina Partnership, Respondents,**

v.

**NATIONSBANK, Appellant.**

No. 24500.

Supreme Court of South Carolina.

Heard May 4, 1995.

Decided Oct. 7, 1996.

Rehearing Denied Nov. 7, 1996.

92

James H. Watson, Jack H. Tedards, Jr., and Steven E. Farrar, all of Leatherwood, Walker, Todd & Mann, P.C., Greenville, for appellant.

G. Trenholm Walker and Andrew K. Epting, both of Wise & Cole, P.A., Charleston, for respondents Future Group II, Heffron, Ingle, McDowell & Cooper, Inc., and Michael Runey.

George J. Kefalos, Charleston, for respondent The Five R's.

MOORE, Justice:

This appeal is from a judgment against appellant (Bank) on several causes of action resulting in a verdict of nearly $1.9 million. We affirm in part and reverse in part.

## I. FACTS

Respondent Heffron, Ingle, McDowell & Cooper, Inc. (Agency) is an insurance agency that was wholly owned by respondent Future Group II (Future Group) during the events relevant to this case. Bob Heffron was a director and president of both corporations. This litigation followed the sale of Agency to St. Paul Fire and Marine Insurance Co. (St. Paul) in November 1990. The case involves several complex financial transactions as set forth below.

### a. Runey Transactions

In 1985, Heffron purchased Agency in part ownership with Capital South, Inc. Two years later, in December 1987, Agency bought out Capital South's share for $7.8 million. To accomplish this buy out, Heffron incorporated Future Group as a holding company for Agency. Agency borrowed $3.8 million from St. Paul in exchange for a first lien on all of Agency's assets and stock and borrowed $800,000 from another source. In addition, Heffron borrowed $800,000 from Bank and gave his personal note in this amount. For the remaining $2.4 million, Heffron approached a friend, respondent Dr. Michael Runey.

In April 1988, at Heffron's request, Runey paid $500,000 in cash and signed a $2.4 million promissory note in exchange for 29,000 shares of preferred stock in Future Group. Runey subsequently borrowed $750,000 from Bank to pay down the $2.4 million note to $1.65 million. As a result, the $2.4 million note became "non-recourse" as to Runey, meaning he was no longer personally liable, and Runey's 29,000 preferred shares of Future Group were pledged as collateral to secure the

$750,000 note. Runey paid more than $45,000 in interest and $50,000 in principal on the note.

When Agency was sold to St. Paul in November 1990, Runey negotiated for the balance of the $750,000 note to be paid out of the sale proceeds in exchange for his consent to the sale which was needed given his status as a preferred shareholder in Future Group. He also received an assignment of any cause of action maintainable by Agency or Future Group.

### b. Transaction with 5R's

Respondent Five R's (5R's) is a business partnership. In March 1989, at Heffron's request, 5R's agreed to give Agency $80,000 as an investment. The return was to be either 12% interest on the $80,000 or stock in Agency. In exchange, 5R's received a note from Agency.

When 5R's learned of the pending sale of Agency to St. Paul, it notified Agency of the outstanding debt for $80,000. Agency contested the validity of the note and 5R's was not repaid at the time of the sale to St. Paul.

### c. March 1990 Refinancing

In March 1990, Bank obtained Agency's corporate guarantee of two debts: one was the $800,000 Heffron originally borrowed to repurchase Agency from Capital South in 1987; the other was $500,000 borrowed by Future Group but used as a credit line by Agency. The notes on these debts were in default in the fall of 1989. Bank negotiated with Heffron for renewal of the notes if Agency would give its corporate guarantees secured by a lien on all Agency's assets. This lien would be second in priority to St. Paul's lien but would have priority over unsecured creditors.

Counsel for Agency and Future Group, Drayton Hastie, refused to give an opinion letter approving the transaction. He advised Bank that the transaction would be a conveyance in defraud of creditors unless all creditors consented. Significantly, Hastie's law firm was itself a creditor since it held promissory notes from Future Group for $594,000. Despite Hastie's protestations, Bank went ahead with the proposed refinancing on March 9, 1990. In exchange for St. Paul's consent, Future Group pledged all shares of Agency to St.

Paul. The $500,000 credit line was given a maturity date of April 1, 1990, and the $800,000 Heffron debt was extended six years. Neither Runey nor 5R's was informed of this refinancing transaction.

### d. November 1990 Sale to St. Paul

After the March 1990 transaction, a deal was negotiated with the senior lienholder, St. Paul, whereby St. Paul would purchase Agency. The sale was consummated on November 2, 1990. The terms of the purchase included an assumption of several liabilities including the $800,000 Heffron debt and the $500,000 credit line debt that had become corporate obligations of Agency under the March 1990 refinancing agreement. In addition, Future Group was to receive an amount sufficient to pay off the outstanding $750,000 Runey debt to Bank and the $594,000 in notes held by Hastie's law firm. Future Group was liquidated. The total purchase price for Agency was $1.5 million plus the assumption of liabilities totalling more than $10 million.

### e. This Litigation

After the sale of Agency to St. Paul, Runey and 5R's commenced this action against Bank alleging wrongdoing in the March 1990 refinancing transaction.[1] Runey brought suit as an individual and in his capacity as the assignee of all existing causes of action maintainable by Future Group or Agency. The complaint alleged Bank's liability for the March 1990 transaction based on (1) aiding and abetting Heffron's breach of fiduciary duty (2) conspiracy as to the transfer of Heffron's $800,000 debt to Agency and (3) fraudulent conveyance.

The trial judge[2] found for 5R's and Runey on all causes of action[3] and rendered a verdict for Runey in the amount of

---

1. Heffron was also sued but was released from the case when he declared bankruptcy.

2. The case was tried non-jury by consent.

3. In addition to the causes of actions pled in the complaint, the trial judge also found the March 1990 transaction voidable under S.C.Code Ann. §§ 33–8–310 and –320 (1990) as an ultra vires act of the corpora-

$1,746,537.66 and for 5R's in the amount of $142,223.30. This appeal followed.

## II. DISCUSSION

### a. Fraudulent Conveyance

The trial judge found Agency's guarantees of the $800,000 Heffron debt and the $500,000 credit line debt were fraudulent conveyances and set them aside as provided in S.C.Code Ann. § 27–23–10 (1991).[4] Bank claims error on several grounds.

 Under § 27–23–10, a transfer made without valuable consideration[5] will be set aside as a fraudulent conveyance if the grantor was indebted to the plaintiff at the time of the transfer and the grantor failed to retain sufficient property to pay his debt to plaintiff, not merely at the time of transfer, but at the time plaintiff seeks to collect. *Gardner v. Kirven,* 184 S.C. 37, 191 S.E. 814 (1937); *Penning v. Reid,* 167 S.C. 263, 166 S.E. 139 (1932); *Dufresne v. Regency Realty, Inc.,* 295 S.C. 1, 366 S.E.2d 256 (Ct.App.1987). If there *is* valuable consideration, the transfer will be set aside only where the grantor was indebted at the time of the transfer and had an actual intent to defraud creditors imputable to the grantee. *Coleman v. Daniel,* 261 S.C. 198, 199 S.E.2d 74 (1973); *Gardner, supra; Dufresne, supra.*

---

tion. A judgment must conform to both the pleadings and the proof. *Glass v. Glass,* 276 S.C. 625, 281 S.E.2d 221 (1981). Since this cause of action was not pled, it cannot support the judgment in this case.

4. This section is referred to as The Statute of Elizabeth and provides:

Every feoffment, gift, grant, alienation, bargain and conveyance of land, tenements or hereditaments, goods and chattels, or of any of them, or of any lease, rent, commons or other profit or charge out of the same, by writing or otherwise, and every bond, suit, judgment and execution which may be had or made to or for any intent or purpose to delay, hinder or defraud creditors and others of their just and lawful actions, suits, debts accounts, damages, penalties and forfeitures shall be deemed and taken ... to be clearly and utterly void, frustrate and of no effect, any pretense, color, feigned consideration, expressing of use, or any other matter or thing to the contrary notwithstanding.

5. A conveyance made without valuable consideration is sometimes referred to as "voluntary." *See First State v. Nodine,* 291 S.C. 445, 354 S.E.2d 51 (Ct.App.1987).

First, Bank contends there was valuable consideration given for the corporate guarantees and therefore the transfers should not be set aside absent actual intent to defraud. We disagree.[6]

Under the evidence presented, Agency's guarantee of the $800,000 Heffron debt was without valuable consideration since there is no evidence of any benefit received by Agency. Heffron obtained a benefit since the $800,000 note was extended six years as a result of the March 1990 transaction. Value given to a person other than the debtor in exchange for the debtor's assets does not constitute consideration sufficient to avoid the application of § 27–23–10. *Dufresne, supra.* The preponderance of the evidence supports the conclusion the $800,000 Heffron debt guarantee was without valuable consideration to Agency.

As to the $500,000 credit line debt guarantee, evidence in the record indicates the $500,000 credit line was used by Agency to run the business although Future Group was the named borrower. In exchange for the corporate guarantee of this debt given by Agency on March 9, 1990, Bank agreed to extend the loan to April 1, 1990, only a few weeks. There is no evidence this brief extension benefitted Agency. Further, the credit line had already been exhausted and no new funds were extended as a result of the guarantee. Consideration that is wholly past is not valuable consideration. *Garrett v. Stuart,* 6 S.C.Eq. (1 McCord Eq.) 514 (1821). Since no valuable consideration was given for either transfer, no actual intent to defraud need be shown. *Coleman, supra.*

Next, Bank contends Runey failed to establish he was entitled to recover pursuant to § 27–23–10 because Agency was not indebted to Runey. We agree. Runey relies solely on his status as a preferred shareholder of Agency's holding company, Future Group, to assert his right to recover as a creditor. In the absence of special statutory or contrac-

---

6. This cause of action is an equitable one and on appeal this Court will find facts in accordance with its own view of the preponderance of the evidence. *Coleman, supra.* When legal and equitable causes of action are maintained in one suit, each retains its own identity as legal or equitable. *Floyd v. Floyd,* 306 S.C. 376, 412 S.E.2d 397 (1991). Accordingly, the standard of review for an equity case applies here.

tual provisions, a preferred shareholder is not a creditor of a corporation by virtue of his ownership of stock. 18A Am. Jur.2d *Corporations* § 753 (1985). Accordingly, we hold Runey cannot recover on this cause of action.

We find without merit, however, Bank's contention that 5R's was not a creditor at the time of the March 1990 transaction. Five R's loaned Agency $80,000 in March 1989. Although Bank contests the validity of the note evidencing the debt, there is no evidence the debt was not valid.

Next, Bank claims Agency's giving of the corporate guarantees was not a conveyance within the scope of § 27–23–10 because Bank did not execute on the guarantees and therefore nothing was actually conveyed away from Agency. This argument is without merit. One who is in debt cannot make a conveyance without consideration that will prevail against existing debts. *Richardson v. Rhodus*, 48 S.C.L. (14 Rich.) 95 (1866); *First State v. Nodine, supra.* Since 5R's held an existing debt at the time Agency gave the corporate guarantees, its debt was entitled to priority over the $800,000 Heffron debt and $500,000 credit line debt at the time of the sale to St. Paul. The corporate guarantees were properly set aside as fraudulent conveyances to allow the recovery of 5R's debt because Agency was indebted to 5R's at the time the corporate guarantees were given, the corporate guarantees were given without consideration, and Agency failed to retain sufficient assets to repay the 5R's debt.

Finally, Bank argues 5R's did not reduce its claim to judgment and therefore cannot invoke the remedy provided in § 27–23–10. This statute is not limited to judgment creditors and no judgment is needed to invoke it. *Lebovitz v. Mudd*, 293 S.C. 49, 358 S.E.2d 698 (1987).

In conclusion, the trial judge properly allowed 5R's to recover its debt pursuant to § 27–23–10.

### b. *Aiding and Abetting Breach of Fiduciary Duty*

To facilitate the March 1990 refinancing, Agency's board of directors signed a corporate resolution stating that a pledge of the corporation's assets to guarantee the $800,000 and $500,000 debts was in the best interest of the corporation. This

corporate resolution was inadequate under Agency's by-laws to authorize a corporate guarantee of a director's debt. Under Article XIV of the by-laws, such a transaction must be approved by a vote or the written consent of at least 75% of the shares of all classes exclusive of the shares held by the director to be benefitted. The trial judge found Bank knowingly participated with Heffron who breached his fiduciary duty by obtaining the invalid corporate resolution.

Bank contends the trial judge erred in finding it liable on this cause of action because there is no evidence Bank knowingly participated in Heffron's breach. We agree.[7]

Other courts have recognized a cause of action for aiding and abetting a breach of fiduciary duty where a plaintiff proves (1) a breach of a fiduciary duty owed to the plaintiff (2) the defendant's knowing participation in the breach and (3) damages. *See Holmes v. Young*, 885 P.2d 305 (Colo.1988). The gravamen of the claim is the defendant's knowing participation in the fiduciary's breach. *Id.* at 309; *see also Samuel M. Feinberg Testamentary Trust v. Carter*, 652 F.Supp. 1066 (S.D.N.Y.1987); *Spinner v. Nutt*, 417 Mass. 549, 631 N.E.2d 542 (1994); *Blow v. Shaughnessy*, 88 N.C.App. 484, 364 S.E.2d 444 (1988); Restatement of Torts 2d, § 876(b).

In this case, Heffron breached his fiduciary duty as a director by failing to obtain Runey's consent as a shareholder for the March 1990 transaction in contravention of Agency's by-laws. There is no evidence in the record, however, that Bank had actual knowledge Agency's by-laws required shareholder approval. Although Agency's counsel, Drayton Hastie, knew it, there is no evidence he advised Bank. Further, at the time of the March 1990 transaction, the statutory requirement for guaranteeing an obligation of a director was *either* majority approval of shareholders *or* approval by the board of directors upon a determination that such a transaction was in the best interest of the corporation. S.C.Code Ann. § 33–8–320 (1990). Accordingly, on its face the corpo-

---

7. An action for breach of fiduciary duty is an action at law. *See O'Shea v. Lesser*, 308 S.C. 10, 416 S.E.2d 629 (1992). On appeal, we will uphold the trial judge's findings of fact unless they are without evidentiary support. *Townes Associates, Ltd. v. City of Greenville*, 266 S.C. 81, 221 S.E.2d 773 (1976).

rate resolution appeared sufficient without shareholder approval.

We conclude the record contains no evidence Bank knowingly participated in Heffron's alleged breach of his fiduciary duty in obtaining the corporate resolution.

### c. Civil Conspiracy

■ Runey and the 5R's alleged in their complaint that Bank conspired with Heffron to harm them by obtaining Agency's corporate guarantee of the $800,000 Heffron debt. Bank contends the trial judge erred in ruling against it on this cause of action because there is no evidence of civil conspiracy.[8] We agree.

■ A civil conspiracy is a combination of two or more parties joined for the purpose of injuring the plaintiff thereby causing him special damage. *La Motte v. The Punch Line of Columbia*, 296 S.C. 66, 370 S.E.2d 711 (1988). A conspiracy is actionable only if overt acts pursuant to the common design proximately cause damage to the party bringing the action. *Todd v. S.C. Farm Bureau Mut. Ins. Co.*, 276 S.C. 284, 278 S.E.2d 607 (1981).

■ First, we agree there is no evidence Bank combined with Heffron to damage 5R's by obtaining Agency's corporate guarantee since there is no evidence Bank even knew of 5R's existence in relation to Agency. Accordingly, there is no evidence to support the conclusion 5R's was damaged as a result of a common design between Bank and Heffron to injure 5R's.

■ Further, we agree with Bank that Runey cannot prevail on this cause of action either in his capacity as corporate assignee or in his individual capacity as a preferred shareholder of Future Group. Both corporate entities participated in the March 1990 transaction: Agency approved the giving of its corporate guarantee and Future Group pledged all its shares of Agency to St. Paul to facilitate the refinancing of the $800,000 Heffron debt. There is no evidence either

---

8. An action for civil conspiracy is an action at law. *Todd, infra.* On appeal, we will uphold the trial judge's findings of fact unless they are without evidentiary support. *Townes Associates, Ltd. v. City of Greenville, supra.*

corporate entity was harmed as the proximate result of a conspiracy between Heffron and Bank rather than as a result of its own action. Further, there is no evidence the lien on Agency's assets proximately caused special damage to Runey as a Future Group shareholder at the time of Agency's sale to St. Paul. Accordingly, we reverse the award of judgment to Runey.

### d. Prejudgment interest

Bank contends 5R's is not entitled to prejudgment interest. We agree. Prejudgment interest is allowed on obligations to pay money from the time when payment is demandable, either by agreement of the parties or by operation of law, if the sum is certain or capable of being reduced to certainty. *Babb v. Rothrock*, 310 S.C. 350, 426 S.E.2d 789 (1993). Here, the sum owed to 5R's, while capable of being reduced to certainty, was not demandable *from Bank* by operation of law or agreement at any time before entry of judgment. Accordingly, prejudgment interest should not be awarded.

### III. CONCLUSION

The judgment for 5R's is affirmed on the cause of action for fraudulent conveyance and the verdict reduced to $93,173.34 to reflect a deduction for the erroneous award of prejudgment interest. The judgment for Runey is reversed.

**AFFIRMED IN PART; REVERSED IN PART.**

FINNEY, C.J., TOAL and WALLER, JJ., and Acting Associate Justice, JOHN C. HAYES, III, concur.