511 S.E.2d 372

FIRST UNION NATIONAL BANK OF SOUTH CAROLINA, as Successor Trustee under Trust Agreement dated November 30, 1973, under Agreement with Josephine B. Clary, as Settlor, Respondent/Respondent/Appellant,

v.

Margaret Ann SODEN, Nancy Pierce Cashwell, Deborah Karen Walters Smith, Barbara Nightingale Walters Migaleddi, Patricia Lanning Walters and Joseph Herschel Pierce, Defendants,

of whom Margaret Ann Soden, Deborah Karen Walters Smith, Barbara Nightingale Walters Migaleddi, Patricia Lanning Walters and Joseph Herschel Pierce are Respondents/Appellants/Respondents,

and Nancy Pierce Cashwell is Appellant/Respondent/Respondent.

First Union National Bank of South Carolina, as Successor Trustee under Trust Agreement dated November 30, 1973, under Agreement with Joseph Clary, as Settlor, Respondent/Respondent/Appellant,

v.

Joseph Herschel Pierce and Nancy Pierce (formerly Cashwell), Third–Party Defendants,

of whom Nancy Pierce (formerly Cashwell) is Appellant/Respondent/Respondent.

No. 2900.

Court of Appeals of South Carolina.

Heard Oct. 7, 1998.

Decided Nov. 16, 1998.

556

559

560

Nancy H. Pierce, pro se of Wisconsin, appellant/respondent/respondent.

David M. Yokel and Charles D. Hoskins, both of Mitchell, Bouton, Duggan, Yokel & Childs, of Greenville, for respondent/appellant/respondent.

R. David Massey and Chris B. Roberts, both of Brown, Massey, Evans & McLeod, of Greenville, for respondent/respondent/appellant.

HUFF, Judge:

This case involves the rights and claims of parties to the Josephine Clary trust which, by its terms, was to terminate upon the income beneficiary's death or remarriage. Upon learning in September 1992 that Joseph Pierce (hereinafter Joseph), the income beneficiary, had allegedly remarried in 1984, First Union National Bank, as successor trustee, brought this action in probate court seeking guidance as to the proper course of action relative to the distribution of the trust

assets. Josephine Clary's niece and three great-nieces (here-inafter, collectively, the Soden Group) were remainder benefi-ciaries under the trust. Joseph's daughter, Nancy Pierce (hereinafter Nancy), was also a remainder beneficiary. The Soden group asserted cross-claims and counterclaims against the Trustee and Joseph. Nancy asserted cross-claims and counterclaims against the Trustee. Joseph also filed counter-claims and cross-claims against the Trustee. The Trustee then amended its complaint to assert various claims against Joseph and Nancy.

The action was removed to circuit court. Over Nancy's objection, it was referred to the master in equity, with direct appeal to the supreme court. The master entered judgment against the Trustee and Joseph. In addition, he limited Nancy's recovery from the trust. In a subsequent order, the master granted the Trustee a portion of its attorney's fees to be paid from Nancy's share of the trust. He denied the other parties' requests for attorney's fees.[1] All parties, except for Joseph, appeal. We affirm in part and remand in part.

### FACTUAL/PROCEDURAL BACKGROUND

In 1973, Josephine Clary established a trust with Citizens National Bank in Connecticut providing for herself as income beneficiary, with the trust terminating upon her death. Her niece Margaret Ann Soden and her nephew, Ralph Henry Walters, Jr., were to divide the remainder equally after her death. In 1975, Josephine married Joseph. In 1978, Joseph-ine amended the trust to give Joseph the income interest after her death. The trust was to terminate upon Joseph's death or remarriage. The remaining principal then was to be divided among Ms. Soden who would receive 40%, Nancy, who would receive 30%, and the children of Ralph Henry Walters, Jr., who would divide 30% among themselves.

Josephine died on November 27, 1980. Joseph was 66 at the time. After traveling for a while, Joseph moved to Greenville, South Carolina to live with Nancy. When the Connecticut bank discontinued its trust department in 1982, the Trust was transferred to Southern Bank and Trust in

---

1. First Union and the Soden Group settled their claims with each other prior to consideration of the various claims for attorney's fees.

Greenville, South Carolina. In 1982, Joseph moved to Port Royal. In 1986, Southern merged into First Union.

A mutual friend introduced Joseph to Elizabeth McMillan (hereinafter Elizabeth), a nurse, in the fall of 1983. Joseph was living in Port Royal and traveling to Greenville, where Elizabeth lived, to receive cancer treatments. They would talk on the phone and go out on dates when he was in town. In May of 1984, Joseph and Elizabeth were married in a civil ceremony in Savannah, Georgia. Joseph explained they married to protect Elizabeth from the social stigma of living together without the benefit of marriage. Because of her employment commitments, Elizabeth did not move to Port Royal until several months later.

Joseph was, at best, inconsistent with revealing his marital status. Until 1992, Joseph listed his filing status as single on his income tax returns. In a will executed March 25, 1985 he referred to Elizabeth as "my wife, Elizabeth G. Pierce." However, in a will executed May 6, 1991 he referred to her as "my friend, Elizabeth G. McMillan." Although he did not normally introduce Elizabeth as his wife, Joseph told one friend about the marriage when Elizabeth came to the house to live. He denied he ever discussed his marriage with Nancy.

Joseph did not inform the Trustee of his remarriage and continued receiving monthly disbursements from the Trust. In fact, in 1987, when the Trustee informed him his monthly payments would decrease, Joseph had a lawyer contact the Trustee. After the lawyer explained that because of Joseph's health problems he needed continuation of the $800 monthly payments, the Trustee realigned the Trust's investments to maintain the amount of the payments.

In June of 1992, Nancy's ex-husband contacted remainder beneficiary Margaret Ann Soden, one of the Soden remainder beneficiaries, to disclose his knowledge about Joseph's remarriage. In September of 1992, an attorney for the Soden Group sent the Trustee a copy of Joseph's and Elizabeth's marriage certificate. The Soden Group brought suit against the Trustee and Joseph Pierce in federal court in New Jersey, attaching a copy of the marriage license to the summons and complaint. After receiving these documents, the Trustee wrote Joseph

Pierce, asking him to confirm his marriage.[2] Joseph never responded to this letter. In September 1992, the trustee ceased paying Joseph the trust income and stopped collecting administration fees from the trust.

After the federal action was dismissed for lack of personal jurisdiction, the Trustee commenced the present action in probate court. In a request for admission from the Soden Group, Joseph admitted he and Elizabeth went through a marriage ceremony, but stated he had not been able to physically consummate the marriage. He explained Elizabeth provided him health care and the marriage was to protect her reputation. He described their relationship as friends and companions. In a later document, Joseph asserted the question of whether his relationship constituted a valid marriage under Georgia law was at issue. However, in his deposition taken August 11, 1993, Joseph stipulated that he and Elizabeth Pierce were married in May of 1984. He stated he has considered Elizabeth to be his wife since their marriage. He also admitted he was no longer entitled to receive income from the trust because of his remarriage.

The balance of the trust account at the time of Joseph's remarriage was $129,687.00. During the period of time the Trustee became aware of Joseph's remarriage, the trust had a market value of $179,045.91. At the time of the hearing, $185,196.52 was in the trust account.

The master found Joseph was aware, at the time of his remarriage, that his income from the trust should terminate. He found Joseph had a duty to inform the Trustee of his marital status, and held Joseph was responsible to the Trustee for damages suffered by reason of his conduct. He awarded the Trustee judgment of $88,669 against Joseph, the amount erroneously paid him from June 28, 1984 to August 28, 1992.

As to the Trustee, the master held it breached its duty to take reasonable steps to ascertain Joseph's marital status. In addition, he found Joseph's breach of his duty to disclose his marital status did not relieve the Trustee of its separate duty to safeguard the interests of the innocent remainder beneficiaries.

---

2. The letter gave the date of the marriage as April 18, 1984, the date the marriage license was issued.

The master further held the evidence was not sufficient to support the Trustee's claims against Joseph and Nancy for civil conspiracy. He noted Nancy acknowledged she was aware of the remarriage provision in the trust, but asserted she did not know about her father's remarriage. The master found this position incredible, and found Nancy was aware of Joseph's remarriage shortly after it occurred. He held Nancy was equitably estopped from recovering any funds from the trust other than a 30% interest in the trust as of her father's 1984 marriage, the amount she would have received had she informed the bank of her father's remarriage. The court explained Nancy should not "in equity and good conscience be allowed to watch her father receive money not due him, allow the bank to be exposed to damage claims by reason of such payments, and then to claim that she should benefit from her silence." He found to make further awards to her on this claim would be to reward her silence and would be unjust. The court, however, found Nancy was entitled to an additional $3,378.26, representing a 30% interest in fiduciary management fees which the court found were improperly received by the Trustee.

The master distributed the remaining funds in the Trust and the rest of the fiduciary fees to the Soden Group. He also entered judgment against the Trustee in favor of the Soden Group in the amount of $88,669, the amount of income that the Trustee wrongfully paid to Joseph, plus interest on that amount from May 30, 1985 through August 30, 1992. The master explained that running the interest a year after the marriage allowed the Trustee the benefit of a reasonable time to have discovered the remarriage.

In a subsequent order, the master awarded the Trustee $10,365.68 in attorney's fees, to be deducted from Nancy's share of the trust. He denied the other parties' claims.

## LAW/ANALYSIS

### I. Nancy's Appeal

#### A. Jury Trial

Nancy first argues the circuit court erred in denying her demand for a jury trial and referring the case to the master in

equity. This argument is procedurally barred, as Nancy failed to timely appeal the issue.

Orders affecting the mode of trial affect substantial rights under S.C.Code Ann. § 14–3–330(2) (1977) and must, therefore, be appealed immediately. *Lester v. Dawson,* 327 S.C. 263, 491 S.E.2d 240 (1997). The failure to immediately appeal an order affecting the mode of trial effects a waiver of the right to appeal that issue. *Id.; see also Edwards v. Timmons,* 297 S.C. 314, 377 S.E.2d 97 (1988) (where appellant did not appeal the order referring matter to master in equity, she could not complain after final order that she was deprived of her right to a trial by jury); *Creed v. Stokes,* 285 S.C. 542, 331 S.E.2d 351 (1985) (where appellant failed to timely appeal an order referring dispute to master in equity, appellant could not later complain that he had been entitled to a trial by jury). Nancy's failure to timely appeal the denial of her demand for a jury trial prevents this court from addressing the issue.

### B. Repayment by Joseph

Nancy also contends the master erred in requiring Joseph to repay the income he received after his remarriage. Respondent Trustee asserts that Nancy is not an aggrieved party as to that issue, and therefore lacks standing to appeal it. We agree. Only a party aggrieved by an order, judgment, or sentence may appeal. Rule 201(b), SCACR. The right of review is restricted to persons or parties aggrieved by the decision below. *Bivens v. Knight,* 254 S.C. 10, 173 S.E.2d 150 (1970). An aggrieved party is one who is aggrieved by the judgment or decree when it operates on his rights of property or bears directly on his interest, the word aggrieved referring to a substantial grievance, a denial of some personal or property right, or the imposition on a party of a burden or obligation. *Cisson v. McWhorter,* 255 S.C. 174, 177 S.E.2d 603 (1970). A party cannot appeal from a decision which does not affect his interest, however erroneous and prejudicial it may be to the rights and interests of some other person. *Bivens,* 254 S.C. at 13, 173 S.E.2d at 152. The master's requirement that Joseph repay the income he received after his remarriage does not affect Nancy's interest and, accordingly, she has no standing to argue this issue on appeal.

By way of reply brief, Nancy contends she is required to dispute the finding against Joseph, as it is a basis for limiting her recovery. She argues she has standing to raise this issue, as the ruling thus affects her. We disagree. First, the master's order in no way found Joseph's conduct was a basis for limiting Nancy's recovery. Indeed, the master found in favor of Nancy and Joseph on the civil conspiracy issue. The limitation of her award was based on the master's finding as to Nancy's own inequitable conduct, not that of her father. Further, the exception raised by Nancy is that the master erred in requiring Joseph to repay the income he received after his remarriage. Her arguments here are strictly confined to why the master erred in awarding judgment against Joseph, not herself. It is a fundamental rule of law that an appellate court will affirm a ruling by a lower court if the offended party does not challenge that ruling. *Lindsay v. Lindsay*, 328 S.C. 329, 491 S.E.2d 583 (Ct.App.1997), *cert. denied* (June 18, 1998). Failure to challenge the ruling is an abandonment of the issue and precludes consideration on appeal. The unchallenged ruling, right or wrong, is the law of the case and requires affirmance. *Id.* Joseph has not appealed the judgment against him and, accordingly, it stands as the law of the case.

## C. Nancy's Knowledge of the Remarriage

Nancy next argues the master erred in finding she knew of her father's remarriage. She contends the evidence is insufficient to support such a finding. We disagree.

Roy Lee Cashwell, Nancy's ex-husband, related that in the summer or fall of 1984, after speaking with her father on the telephone, Nancy told him of her father's remarriage. He stated he was not surprised to hear this news because he and Nancy had speculated about Joseph's remarriage for a period of time. Cashwell stated that, after Nancy would have disagreements with her father over the phone, she would become angry about Joseph continuing to receive money from the trust. According to Mr. Cashwell, Nancy also told his mother and his sister about Joseph's remarriage.

Mr. Cashwell also provided an insurance application he had prepared for Joseph in 1989, on which Mr. Cashwell listed as

an additional driver "Elizabeth Pierce, wife." Joseph scratched though Pierce and wrote in McMillan for the last name; he did not correct the designation of Elizabeth as his wife.

Mr. Cashwell, Nancy and their children visited three to four times a year with Joseph when Joseph was living in Charleston and Beaufort. Joseph and Nancy telephoned every week. Nancy told her children to call Elizabeth "Grandma Beth." They called her father "Grandpa Joe." When they would visit Nancy in Greenville, they would stay in the same bedroom.

Nancy admitted she knew her father and Elizabeth were living together; however, she denied knowing of the remarriage. She stated it never crossed her mind that her father had actually married Elizabeth. She explained she and her father did not inquire into each other's business.

The master found Nancy's denial of knowledge of her father's remarriage to be "unbelievable". He found Nancy was aware of the remarriage provision in the trust and became aware of Joseph's remarriage shortly after it occurred. In spite of this knowledge, Nancy did not inform the Trustee. He thus determined that Nancy's inequitable conduct warranted limitation of Nancy's distribution from the trust to that which she would have received had she informed the Trustee of her father's remarriage. Because the master determined this issue as one in equity, we have the authority to find the facts based on our own view of the preponderance of the evidence. However, we are not required to disregard the findings of the trial judge who saw and heard the witnesses and was in a better position to judge their credibility. *Alala v. Peachtree Plantations, Inc.,* 292 S.C. 160, 355 S.E.2d 286 (Ct.App.1987). Based on our own review of the evidence, we find ample evidence to support the master's finding that Nancy knew of the remarriage.

### D. Limitation of Nancy's Recovery

Nancy argues the trial court erred in holding she was estopped from recovering her full share of the trust and the judgment against the Trustee. She raises several other issues relative to this argument.

Nancy contends the master erred in holding she was estopped from recovering her full share of the trust because the Trustee failed to plead estoppel by silence and the facts do not support a finding of estoppel by silence. Nancy, however, failed to preserve this issue by way of a 59(e) motion. *See Pelican Bldg. Centers of Horry–Georgetown, Inc. v. Dutton,* 311 S.C. 56, 427 S.E.2d 673 (1993) (where an issue has not been ruled upon by the trial judge nor raised in a post-trial motion, such issue may not be considered on appeal); *Godfrey v. Heller,* 311 S.C. 516, 429 S.E.2d 859 (Ct.App.1993) (where an appellant learns for the first time when the appellant receives the order that the respondent would be granted certain relief, the appellant must move, pursuant to Rule 59(e), SCRCP, to alter or amend the judgment to preserve the issue; where theory of unjust enrichment was first raised in trial court's order, appellant should have challenged this basis for recovery in a post-trial motion to preserve the issue for appellate review). In any event, we find no merit to this argument. The order below does not reflect a finding of estoppel by silence, but appears to rest more on the principle of unclean hands, a theory clearly pled by the Trustee.

Nancy also asserts the master erred in limiting her award because the Trustee must bear all of the costs flowing from its breach of its fiduciary duty. Again, Nancy failed to preserve this issue by way of a 59(e) motion. *SSI Medical Services, Inc. v. Cox,* 301 S.C. 493, 392 S.E.2d 789 (1990) (an issue not ruled on by the trial judge is not preserved for appeal, even if that issue was raised). Further, even if this issue were properly preserved, we find no merit to this argument. The master's order does not excuse the trustee from liability for damages as a result of the Trustee's breach. Rather, the master found Nancy's misconduct impacted upon the amount of damages she was entitled to receive. In other words, the master found Nancy was prohibited from receiving damages for any loss she may have incurred as a result of her own inequitable conduct. The doctrine of unclean hands precludes a plaintiff from recovering in equity if he acted unfairly in a matter that is the subject of the litigation to the prejudice of the defendant. The decision to grant equitable relief is in the discretion of the trial judge.

*Ingram v. Kasey's Associates,* 328 S.C. 399, 493 S.E.2d 856 (Ct.App.1997).

Similarly, Nancy's remaining arguments against the limitation of her recovery are not preserved due to her failure to raise them to the trial court in a post-trial motion, allowing the master an opportunity to address them. *See McGee v. Bruce Hosp. Sys.,* 321 S.C. 340, 468 S.E.2d 633 (1996) (issue must have been raised to the trial court to be preserved for appellate review); *Revis v. Barrett,* 321 S.C. 206, 467 S.E.2d 460 (Ct.App.1996) (where appellant failed to seek clarification of discrepancy in order with a post-trial motion, appellate court may not address issue on appeal); *Noisette v. Ismail,* 304 S.C. 56, 403 S.E.2d 122 (1991) (where a trial court does not explicitly rule on an argument raised, and appellant makes no Rule 59(e) motion to obtain a ruling, the appellate court may not address the issue).

### E. Attorney's fees for Trustee

Nancy asserts the master erred in ordering her to pay the Trustee $10,365.68 in attorneys fees. We remand for further consideration of this issue.

The Trustee requested reimbursement from Nancy's share of the trust for a portion of attorney's fees it incurred presenting the issue of Joseph's marital status to the court. It supported its request for attorney's fees with a sworn affidavit from its counsel that included a month-to-month breakdown of the fees and costs related to the determination of Joseph's marital status. The total fees the Trustee contended were attributable to this issue was $69,104.50. "Under an abundance of caution," the Trustee only asserted 50% of that amount ($34,552.25) as reasonably attributable to the Trust, and requested $10,365.68 as Nancy's 30% share. Nancy contested the amount of fees, arguing the trustee's attorneys' fee invoices did not support the award and such an award was excessive. Nancy submitted a list of the billings that she believed met the Trustee's reimbursement standard and asserted the work attributable to that issue was only $8,081.36. The trial court awarded the Trustee the $10,365.68 it requested.

In determining the amount of attorney's fees to award, the court should consider (1) the nature, extent and

difficulty of the legal services rendered; (2) the time and labor devoted to the case; (3) the professional standing of counsel; (4) the contingency of compensation; (5) the fee customarily charged in the locality for similar services, and; (6) the beneficial results obtained. *Glasscock v. Glasscock*, 304 S.C. 158, 403 S.E.2d 313 (1991); *LeFurgy v. Long Cove Club Owners Assoc., Inc.*, 313 S.C. 555, 443 S.E.2d 577 (Ct.App. 1994). Although the master stated he found this amount reasonable "upon a careful review of the relevant factors set forth in *Glasscock v. Glasscock* ...," he did not address the individual factors. We hold a more detailed analysis of the *Glasscock* factors is necessary for this court to determine the appropriateness of the award. We find it impossible from this record to determine the time necessarily devoted to the issue of Joseph's marital status.[3] Accordingly, we remand this issue to the master for redetermination of a reasonable fee for the time the Trustee's counsel necessarily spent investigating and presenting the issue of Joseph's marital status to the court.

Nancy also contends she is entitled to trustee's counsel's work product, so that she might determine the efforts of counsel necessarily expended on the remarriage issue. We find Nancy's request for production of work product is unwarranted. Clearly, a detailed attorney fee statement is sufficient to satisfy her inquiry in regard to this matter. While an itemized statement was not included in the submitted record, this information was requested by and provided to this court. On remand, the master shall consider this statement and provide the same to Nancy in conjunction with the redetermination of attorney's fees pursuant to this court's order.[4]

### F. Denial of Nancy's Request for Attorney's Fees and Costs

Nancy submitted a claim for $45,375 in legal fees, representing the time her husband, an attorney practicing in Wisconsin,

---

3. We note that in his deposition taken August 11, 1993 Joseph stipulated that he and Elizabeth were married in May of 1984. Joseph also admitted in this deposition that he was no longer entitled to the trust income according to the trust agreement.

4. We take no position on whether Nancy would be entitled to the work product as a beneficiary of the Trust since this issue is not relevant to the present litigation.

spent assisting her in this matter. She also submitted a claim for $1997.19 for office material and travel expenses she incurred. The master rejected her claim, ruling Nancy proceeded *pro se* at all times and awarding fees and costs for her husband, who is not a member of the South Carolina Bar and was not admitted *pro hac vice*, would be tantamount to allowing the unauthorized practice of law. Nancy asserts the denial of her claims was error. We disagree.

 This court recently held a *pro se* litigant is not entitled to an award of attorney fees, even when the litigant is a practicing attorney. *Calhoun v. Calhoun*, 331 S.C. 157, 501 S.E.2d 735 (1998). In addition, a citizen may represent a party in litigation "with leave to the court first had and obtained; *provided*, that he declare on oath, if required, that he neither has accepted nor will accept or take any fee, gratuity or reward on account of such [representation]." S.C.Code Ann. § 40-5-80 (1986). Because Nancy's husband is not licensed to practice in this state nor was he admitted *pro hac vice*, allowing him to recover fees would be condoning the unauthorized practice of law. Accordingly, the master did not err in denying Nancy's request for attorney's fees.

 As to Nancy's argument that she is entitled to costs, she cites no authority for the award of the same. "[C]osts have always been regarded in this state as in the nature of penalties; hence statutes allowing them are strictly construed, and the party who claims the right to tax them against another must be able to point to some statute which allows him to do so." *Oliver v. South Carolina Dept. of Highways and Public Transportation*, 309 S.C. 313, 318, 422 S.E.2d 128, 131 (1992) *(citing South Carolina Public Service Authority v. Spearwant Liquidating Co.*, 201 S.C. 207, 22 S.E.2d 252 (1942))*. Accordingly, we find no error in the denial of Nancy's claim for costs.

Finally, and most importantly, the master found there was no statutory or case law authority for the award of attorney's fees and costs. Nancy does not challenge this ruling on appeal. Accordingly, it is the law of the case. *See Dobyns v. South Carolina Dept. of Parks, Recreation and Tourism*, 325

S.C. 97, 480 S.E.2d 81 (1997) (unchallenged ruling by trial court is the law of the case).[5]

### G. Other Unpreserved Issues

Nancy raises several other issues on appeal, none of which is properly preserved. We therefore affirm these issues pursuant to Rule 220(b)(2), SCACR and the following authorities: (1) Issues II and III regarding self-dealing and constructive fraud, *see Noisette v. Ismail,* 304 S.C. 56, 403 S.E.2d 122 (1991) (where the trial court does not explicitly rule on a question and the appellant fails to make a Rule 59(e), SCRCP motion to amend or alter the judgment on that ground, the issue is not properly before the Court of Appeals and should not be addressed); (2) Issue VII regarding reformation of the trust, *see Food Mart v. South Carolina Dep't of Health and Envtl. Control,* 322 S.C. 232, 471 S.E.2d 688 (1996) (matters not argued to or ruled on by the trial court are not preserved for review); *Pelican Bldg. Centers of Horry–Georgetown, Inc. v. Dutton,* 311 S.C. 56, 427 S.E.2d 673 (1993) (where an issue has not been ruled upon by the trial judge nor raised in a post-trial motion, such issue may not be considered on appeal); (3) Issue VIII regarding limitation on the recovery of interest, *see McGee v. Bruce Hosp. Sys.,* 321 S.C. 340, 468 S.E.2d 633 (1996) (issue must have been raised to the trial court to be preserved for appellate review); (4) Issue XII regarding frivolous claims, *see Noisette v. Ismail,* 304 S.C. 56, 403 S.E.2d 122 (1991) (where the trial court does not explicitly rule on a question and the appellant fails to make a Rule 59(e), SCRCP motion to amend or alter the judgment on that ground, the issue is not properly before the Court of Appeals and should not be addressed).[6]

### H. Dismissal of Nancy's Appeal

 The Trustee argues Nancy's appeal should be dismissed in its entirety because she failed to timely serve her

---

5. Nancy's cursory request for fees and costs incurred in this appeal must be addressed by a proper motion pursuant to Rule 222, SCACR.

6. Nancy also requests this court refer the Trustee's counsel for discipline. We decline to take such action ourselves and take no position on any disciplinary action. *See* Rule 413, SCACR.

Designation of Matter to be Included in the Record on Appeal. The Trustee asserted this same argument, among other grounds, in a motion to dismiss during the briefing stage of this appeal. The South Carolina Supreme Court denied that motion by order dated July 15, 1996. This court is therefore precluded from dismissing Nancy's appeal on this ground. *See Valentine v. Davis,* 319 S.C. 169, 460 S.E.2d 218 (Ct.App. 1995) (Court of Appeals does not have authority to dismiss an appeal in a case on the same ground the Supreme Court has previously denied a motion to dismiss, even if the motion to dismiss was summarily denied).

## II. The Soden Group's Appeal

The Soden beneficiaries argue the master erred in denying their request for attorney's fees to be paid from Nancy's share of the trust. They claim they are entitled to have the fees paid under the equitable "common fund" theory. We disagree.

Ordinarily, an attorney must look to his client for compensation for services performed pursuant to his engagement. *Caughman v. Caughman,* 247 S.C. 104, 146 S.E.2d 93 (1965). However, a court exercising equitable jurisdiction may make an allowance of a reasonable fee out of the common fund or property created or preserved, for an attorney representing a party who, at his own expense, has successfully maintained or defended an action for the recovery, preservation, protection, or increase of a common fund or common property, or has created or brought into court a fund in which others are entitled to share. *Petition of Crum,* 196 S.C. 528, 14 S.E.2d 21 (1941). The rule is founded on the principle that one who preserves or protects a common fund works for others as well as himself, and those who have so benefited from this effort should bear their just share of the expenses, including a reasonable attorney's fee. *Id.* The allowance of counsel fees from a fund is capable of great abuse and, therefore, should be granted only when required in the promotion of justice. *Caughman,* 247 S.C. at 110, 146 S.E.2d at 96. Further, before attorney's fees may be charged to a fund in which others are entitled to share, the following conditions must be met:

1. The attorney must preserve or protect a common fund;
2. The attorney's services must have aided in creating, preserving or protecting the fund, and the services must prove fruitful to the general class; and
3. There must be a principle of representation or agency as in a class suit, that is, before one may be allowed compensation out of a common fund belonging to others for services rendered on behalf of the common interest there must be a contract of employment, either expressly made or superinduced by the law upon the facts.

*Caughman,* 247 S.C. at 110–111, 146 S.E.2d at 96; *Blake v. Cannon,* 312 S.C. 135, 139, 439 S.E.2d 302, 304 (Ct.App.1993).

■■■ Here, there is no contract of employment, either express or superinduced by law, between Nancy and the Soden Group's counsel. Nancy chose to represent herself rather than rely on the other beneficiaries' counsel. The master noted Nancy fully participated in every aspect of the trial as a *pro se* litigant and that she "presented and argued her position effectively." Accordingly, we find the necessary conditions for charging attorney's fees to the fund have not been met and the master correctly rejected the Soden Group's request for attorneys fees.

### III. The Trustee's Appeal

The Trustee argues the master erred in finding there was insufficient proof that Joseph and Nancy conspired to defraud the Trustee and the other beneficiaries of the Trust. We disagree.

### A. Standard of Review

■■■■ An action for civil conspiracy is normally an action at law. *Future Group, II v. Nationsbank,* 324 S.C. 89, 478 S.E.2d 45 (1996). However, the character of an action as legal or equitable depends on the relief sought. When equitable relief is sought in an action in tort the action is one in equity. *Culler v. Blue Ridge Elec. Coop., Inc.,* 309 S.C. 243, 422 S.E.2d 91 (1992); *Perry v. Heirs at Law and Distributees of Gadsden,* 313 S.C. 296, 437 S.E.2d 174 (Ct.App.1993), *aff'd as modified,* 316 S.C. 224, 449 S.E.2d 250 (1994). Here, the Trustee was seeking forfeiture of Nancy's share of the trust

based on equitable principles. We therefore have the authority to find the facts based on our own view of the preponderance of the evidence, but we are not required to disregard the findings of the trial judge who saw and heard the witnesses and was in a better position to judge their credibility. *Alala v. Peachtree Plantations, Inc.*, 292 S.C. 160, 355 S.E.2d 286 (Ct.App.1987).

## B. Civil Conspiracy

A civil conspiracy consists of a combination of two or more parties joined for the purpose of injuring the plaintiff thereby causing him special damage. *Future Group, II v. Nationsbank*, 324 S.C. 89, 478 S.E.2d 45 (1996). Concert of action, amounting to a conspiracy, may be shown by circumstantial as well as direct evidence. *Id.* In order to establish a conspiracy, evidence, either direct or circumstantial, must be produced from which a party may reasonably infer the joint assent of the minds of two or more parties to the prosecution of the unlawful enterprise. *Id.* A conspiracy is actionable only if overt acts pursuant to the common design proximately cause damage to the party bringing the action. Civil conspiracy is an act which is, by its very nature, covert and clandestine and usually not susceptible of proof by direct evidence. *Island Car Wash, Inc. v. Norris*, 292 S.C. 595, 599, 358 S.E.2d 150, 152 (Ct.App.1987).

Nancy admitted she knew about the remarriage provision of the trust. In addition, the evidence supports the master's finding that Nancy knew of her father's remarriage. However, we further agree with the master that the evidence failed to establish the necessary overt acts pursuant to a common design. Mere speculation about Nancy's motives in remaining silent does not amount to proof of a conspiracy. Accordingly, we find no error in the master's ruling on this issue.

For the foregoing reasons, the order below is

**AFFIRMED IN PART AND REMANDED IN PART.**

GOOLSBY and HOWARD, JJ., concur.