In re Laura B. HADDOCK, Debtor.

Kevin Campbell, Trustee, Plaintiff,

v.

Laura B. Haddock and Laura Lynn Haddock, Defendants.

Bankruptcy No. 98–09790–W.
Adversary No. 99–80266–W.

United States Bankruptcy Court,
D. South Carolina.

Jan. 14, 2000.

Amy Campbell Kelly, Mt. Pleasant, SC for the Plaintiff.

Rory Dixon Mortimer, Summerville, SC, for the Defendant.

## ORDER

JOHN E. WAITES, Bankruptcy Judge.

THIS MATTER comes before the Court upon Plaintiff's Motion for Summary Judgment (the "Motion") filed with the Court on October 28, 1999. Defendant filed a Motion in Opposition to Summary Judgment asserting that genuine issues of material fact exist. Based upon the pleadings filed with the Court and arguments of counsel at the hearing on the Motion, the Court makes the following Findings of Fact and Conclusions of Law.[1]

## FINDINGS OF FACT

1. Laura B. Haddock ("Debtor") filed a voluntary petition under Chapter 7 of the Bankruptcy Code on November 5, 1998.

2. On or about July 25, 1997, Debtor transferred by deed a remainderman's interest in two parcels of real estate in Colleton County, South Carolina, to her daughter, Laura Lynn Haddock. The consideration stated in the Title to Real Estate was "the sum of Five and no/100 ($5.00) Dollars, Love and Affection for daughter."

3. Debtor purported to retain a life estate interest in the real estate, and she continued to occupy the property and to pay taxes on it.

4. At the time of the transfer, Debtor owed income taxes, as indicated by the Proof of Claim filed in this case on April 6, 1999 by the South Carolina Department of Revenue and Taxation. The South Carolina Department of Revenue and Taxation's claim asserts tax debt for tax years 1995, 1996, and 1997, with the majority of debt being for years prior to 1997. The total amount of the claim at the time of the filing was $5,068.05.

5. Subsequent to the transfer of the two parcels of real estate, Debtor incurred debt for medical services, including that represented by the Proof of Claim filed in this case on January 27, 1999 by Dr. L.H. Howard in the amount of $2,160.00. Debtor had been experiencing poor health prior to the transfer in question.

6. Both the tax and medical services claims are presently deemed allowed pursuant to 11 U.S.C. § 502[2].

7. Debtor's schedules reflect that her sole asset is personal property valued at $2,600. The schedules indicate that she owns no interest in real estate. Debtor's schedules further indicate $39,786.74 in unsecured debt, which primarily consists of medical services debt, including the debt to Dr. Howard, and credit card debt. No secured or priority debt is listed.

8. On or about July 27, 1999, the Trustee commenced this adversary proceeding against Defendants seeking to avoid the transfer of July 25, 1997 pursuant to § 544(b) and S.C.Code Ann. § 27–23–10. Furthermore, the Trustee seeks a judgment against Defendants in an amount equal to the value of the property transferred or for an Order of this Court con-

---

1. The Court notes that to the extent any of the following Findings of Fact constitute Conclusions of Law, they are adopted as such; and to the extent any Conclusions of Law constitute Findings of Fact, they are so adopted.

2. Further references to the Bankruptcy Code shall be by section number only.

veying the title to the property to the Trustee under § 550.

9. In his Motion, the Trustee asserts that the transfer of the subject real estate was without valuable consideration; that the transfer of the remainderman' interest in the property substantially decreased the value of Debtor's interest in the real estate, leaving Debtor insolvent and unable to pay her debts; that there were creditors in existence at the time of the transfer; and that Debtor made the transfer in contemplation of future debts. In support of his argument, the Trustee submitted the affidavit of Shawn Goodwin, a sales agent/appraiser who stated that "the value of the property, or the price at which it would have been listed for sale, had the transfer not occurred, would be approximately $20,000.00 (for the residence) and $8,000.00 (for the river lot)."

10. At the hearing on the Motion, Debtor objected to the Motion asserting that the issuance of her discharge on March 11, 1999 precluded this avoidance action pursuant to § 546, that the Trustee could not seek to avoid a transfer made more than one (1) year before the petition pursuant to § 548, and that there remained a genuine issue of fact which would preclude summary judgment. Debtor also submitted her own four-sentence affidavit which states that, while the transfer was made without valuable consideration, it was made for legitimate estate planning purposes due to Debtor's poor health; that Debtor was not insolvent at the time of the transfer; and that Debtor had no actual intent to hinder, delay, or defraud creditors at the time of the transfer.

## CONCLUSIONS OF LAW

### 1. Standard for Summary Judgment

Rule 56(c) of the Federal Rules of Civil Procedure, made applicable under Bankruptcy Rule 7056, provides that summary judgment is appropriate when the pleadings, depositions, interrogatory answers, admissions, and affidavits show that there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law.

The party seeking summary judgment has the initial burden of showing the absence of any genuine issue of material fact. *Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Temkin v. Frederick County Commissioners,* 945 F.2d 716, 718 (4th Cir.1991), *cert. denied,* 502 U.S. 1095, 112 S.Ct. 1172, 117 L.Ed.2d 417 (1992). Material facts are those identified by controlling substantive law as the essential elements of a claim or defense. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). An issue of material fact is genuine when, "the evidence ... create[s][a] fair doubt." *Ross v. Communications Satellite Corp.,* 759 F.2d 355, 364 (4th Cir.1985). A motion for summary judgment shall be granted, "against a party who fails to make a showing sufficient to establish the evidence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Dunes Hotel Assoc v. Hyatt Corp. (In re Dunes Hotel Assoc.),* 194 B.R. 967, 976 (Bankr.D.S.C.1995). After the movant has proved the absence of any genuine issue of material fact, "the burden of proof shifts and the party opposing summary judgment may not merely rely on his pleadings but must set forth specific facts which controvert the moving party's facts and which show the existence of a genuine issue for trial." *Id.*

### 2. Fraudulent Transfers

The Trustee seeks to avoid the transfer at issue pursuant to § 544(b) and S.C.Code Ann. § 27–23–10. Section 544(b) provides:

(1) Except as provided in paragraph (2), the trustee may avoid any transfer of an interest of the debtor in property or any obligation incurred by the debtor that is voidable under applicable law by a creditor holding an unsecured claim that is allowable under section 502 of this tile or that is not allowable only under section 502(e) of this title.

■ The initial determination to be made by this Court is whether there is a creditor with an allowed claim in this case who provides the Trustee standing to assert the Statute of Elizabeth action. The Statute of Elizabeth, found in § 27–23–10 of the South Carolina Code of Laws, provides:

> Every ... conveyance of lands, tenements or hereditaments, goods and chattels or any of them ... by writing or otherwise ... which may be had or made to or for any intent or purpose to delay, hinder, or defraud creditors and others of their just and lawful actions, suits, debts, accounts, damages, penalties, and forfeitures must be deemed and taken ... to be clearly and utterly void, frustrate and of no effect, any pretense, color, feigned consideration, expressing of use, or any other matter or thing to the contrary notwithstanding.

S.C. CODE ANN. § 27–23–10 (Law.Co-op. Supp.1998). In the case before this Court, the South Carolina Department of Revenue and Taxation appears to have been an existing creditor at the time of the transfer, while Dr. Howard appears to be a subsequent creditor; both creditors holding allowed claims in this bankruptcy case. Therefore, the Trustee, stepping into the shoes of those creditors, has standing to bring the fraudulent conveyance action under the statute to void the transfer of July 25, 1997.

■ In South Carolina, fraudulent conveyances may be set aside for both existing and subsequent creditors; however, the standard the courts apply to set aside the transfers differ slightly on the basis of whether the creditor existed at the time of the conveyance.

> For existing creditors, conveyances can be set aside in two instances:
>
> First, where the challenged transfer was made for a valuable consideration, it will be set aside if the plaintiff establishes that (1) the transfer was made by the grantor with the actual intent of defrauding his creditors; (2) the grantor was indebted at the time of the transfer; and (3) the grantor's intent is imputable to the grantee. Second, where the transfer was not made on a valuable consideration, no actual intent to hinder or delay creditors must be proven. Instead, as a matter of equity, the transfer will be set aside if the plaintiff shows that (1) the grantor was indebted to him at the time of the transfer; (2) the conveyance was voluntary; and (3) the grantor failed to retain sufficient property to pay the indebtedness to the plaintiff in full—not merely at the time of the transfer, but in the final analysis when the creditor seeks to collect his debt.
>
> ... For subsequent creditors, while the analysis is somewhat different, the outcome here is the same. Subsequent creditors may have conveyances set aside when (1) the conveyance was "voluntary," that is, without consideration, and (2) it was made with a view to future indebtedness or with an actual fraudulent intent on the part of the grantor to defraud creditors.

*Mathis v. Burton*, 319 S.C. 261, 460 S.E.2d 406, 408 (App.1995) (quoting *Durham v. Blackard*, 313 S.C. 432, 438 S.E.2d 259, 262 (App.1993)).

■ The Court finds that the conveyances at issue may be set aside both under the standard used for existing and subsequent creditors. In analyzing whether the transfer can be set aside under the existing creditor standard, it is evident that all the elements of the test are met. As set forth above, South Carolina courts have held that conveyances for existing creditors can be set aside under two conditions: (1) where a transfer is made without consideration and the grantor was indebted to the plaintiff at the time of the transfer; and, due to the transfer, the grantor does not have sufficient assets to pay the indebtedness to plaintiff, or (2) where the transfer is made by the grantor with the actual intent of defrauding creditors where that intent is imputable to the grantee,

even though valuable consideration was paid. *Future Group, II v. Nationsbank*, 324 S.C. 89, 478 S.E.2d 45 (1996) (citing *Gardner v. Kirven*, 184 S.C. 37, 191 S.E. 814 (1937)); *Coleman v. Daniel*, 261 S.C. 198, 199 S.E.2d 74, 79 (1973).

█ The first condition is clearly met. On the date of the transfer, July 25, 1997, Debtor was already indebted to the South Carolina Department of Revenue and Taxation. In fact, the Department's claim, which asserts a claim at the time of the filing of $5,068.05, indicates that the debt was for taxes in the years 1995, 1996, and 1997 [3]. The transfer was "voluntary," that is, without consideration; Debtors' daughter paid Debtor the nominal sum of $5.00 and extended Debtor the consideration of "Love and Affection." Due to this gratuitous transfer, the value of Debtor's assets, as reflected in her schedules, was significantly diminished to the extent that Debtor was left with insufficient funds to pay her creditors, including the Department of Revenue and Taxation.

█ There is also evidence before the Court that Debtor made the transfer with the actual intent to defraud the creditors, thus satisfying the second condition. Even though Debtor has denied any fraudulent intent in making the transfer, the court infers such fraudulent intent by considering the following "badges of fraud":

> [T]he insolvency or indebtedness of the transferor, lack of consideration for the conveyance, relationship between the transferor and the transferee, the pendency or threat of litigation, secrecy or concealment, departure from the usual method of business, the transfer of the debtor's entire estate, the reservation of benefit to the transferor, and the retention by the debtor of possession of the property.

*Coleman v. Daniel*, 261 S.C. 198, 199 S.E.2d 74, 79 (1973). The following badges of fraud have been established: (1) Debtor transferred the remainderman's interest in her property to her daughter, (2) the transfer was for no consideration, (3) the transfer was of Debtor's most significant asset, and (4) Debtor retained possession and control over the property by virtue of her life interest. Furthermore, it can be inferred that, because Debtor had incurred tax debt for years prior to the date of transfer, collection action by the tax authority was imminent.

█ The conveyance of July 25, 1997 can also be set aside on the grounds of the subsequent creditor standard. First, as discussed above, the conveyance was "voluntary", that is for nominal consideration. Second, it is clear from the evidence presented to the Court that Debtor made the transfer to her daughter with a view to future indebtedness.[4] In fact, Debtor had been experiencing poor health for some time, even prior to the transfer; then, in 1998, following the transfer of the subject real state to her daughter, she incurred expensive medical services, including the debt to Dr. Howard. To refute the charge of actual fraudulent intent alleged in the Motion, Debtor asserts a one sentence denial, a mere reiteration of the denial contained in her . Answer. There was no showing of actual estate planning or evidence of such advice from an attorney, accountant, or other professional. Pursuant to Federal Rule of Civil Procedure 56(e), in response to the Motion, Debtor may not rest upon the mere allegations of her pleadings but must, by affidavit or otherwise, set forth specific facts showing a genuine issue for trial.

3. The Proof of Claim filed by the Department of Revenue and Taxation summarizes the debt as follows:

| Period Covered | Total Claim |
| --- | --- |
| 12/1/95 | $1,248.60 (Unsecured) |
| 12/1/96 | $ 845.00 (Unsecured) |
| 12/1/96 | $1,143.72 (Priority) |
| 12/1/97 | $ 785.00 (Unsecured) |
| 12/1/97 | $1,045.73 (Priority) |

4. In her Affidavit of Opposition of Motion for Summary Judgment, Debtor states: "I made this transfer for love and affection and for legitimate estate planning purpose, because at the time I was sixty-four (64) years old, and not in good health."

■ Additionally, when considering transfers to family members under either an actual or constructive fraud theory, the burden of proof shifts to the transferee to prove both that valuable consideration was exchanged between the parties and the bonafides of the transaction. Each must be established by clear and convincing evidence, not mere preponderance of the evidence. *See First Union Bank v. Smith,* 314 S.C. 459, 445 S.E.2d 457, 458–59 (App. 1994). In this case, neither Debtor nor the transferee, who is in default in this proceeding, has met that burden of proof.

After applying the standards of South Carolina state law[5] to avoid a fraudulent conveyance for both existing and subsequent creditors, the Court finds that Plaintiff is entitled to summary judgment because the evidence in this case creates no doubt that the transfer was made for no consideration and Debtor made the conveyance at issue with the intent to defraud her creditors.

Debtor also objected to the Motion on the grounds that § 546 precludes this action and that the Trustee cannot seek avoidance of this transfer pursuant to § 548. First, Debtor has not presented any authority to support her argument that § 546 precludes this action as a consequence of Debtor's discharge being entered on March 11, 1999. Section 546(a) provides:

An action or proceeding under section 544 ... of this title may not be commenced after the earlier of—

(1) the later of—

(A) 2 years after the entry of the order for relief; or

(B) 1 year after the appointment or election of the first trustee under section 702, 1104, 1163, 1202, or 1302 of this title if such appointment or such election occurs before the expiration of the period specified in subparagraph (A); or

(2) the time the case is closed or dismissed.

While § 546 sets forth a statute of limitations for the commencement of a § 544 action, the Trustee in the case now before this Court brought the action well within the time limits. The Voluntary Petition was filed on November 5, 1998 and the adversary proceeding commenced on July 27, 1999, thus satisfying the requirement of § 546(a)(1).

Debtor also objected on the basis that the transfer cannot be avoided pursuant to § 548 because it was made more than one year before the filing of the bankruptcy petition. Section 548 provides in pertinent part: "[t]he trustee may avoid any transfer of an interest of the debtor in property, or any obligation incurred by the debtor, that was made or incurred on or within one year before the date of the filing of the petition." Contrary to the arguments in Defendant's Motion, the Complaint does not allege § 548; rather, it seeks to avoid the transfers at issue pursuant to § 544(b) and the Statute of Elizabeth, S.C.Code Ann. § 27–23–10. Presumably, the Trustee utilized § 544(b) and the Statute of Elizabeth, instead of § 548, for that very reason: to reach back beyond the limitations of § 548(a). The Courts thus concludes that Debtor's objections to the Motion are overruled. It is therefore,

---

5.   Recently, the Supreme Court of South Carolina decided the case of *Royal Z Lanes, Inc. v. Collins Holding Corp.,* 337 S.C. 592, 524 S.E.2d 621 (1999). *Royal Z Lanes, Inc.* overruled the South Carolina Court of Appeals decision in *Dufresne v. Regency Realty, Inc.,* 295 S.C. 1, 366 S.E.2d 256 (App.1987) in which the court had concluded that grossly inadequate consideration was sufficient to set aside a conveyance "to the extent of the value of the property transferred less any consideration received in exchange therefor" even without a showing of actual intent to defraud. *Id.* at 258. The South Carolina Supreme Court overruled *Dufresne* and left for the certifying court to consider "whether a remand to the fact-finder is necessary to determine if, in light of this rebuttal presumption, actual intent to defraud is established." *Royal Z Lanes,* 524 S.E.2d at 623. The case, however, has no impact on the holding of this case because the evidence now before this Court shows that no consideration was received by the transferor.

ORDERED that the Plaintiff's Motion for Summary Judgment be granted.

**IT IS FURTHER ORDERED** that the transfer of the real estate described in the complaint is void and of no effect and that the real estate transferred is property of the bankruptcy estate.

**AND IT IS SO ORDERED.**