**In re J.R. DEANS COMPANY, INC. Debtor.**

**Kevin Campbell, Trustee, Plaintiff,**

**v.**

**William Deans, Hope Deans, Hope Real Estate, Ltd., & First Federal of Charleston Defendants.**

**Bankruptcy No. 97–08095–W. Adversary No. 99–80231–W.**

United States Bankruptcy Court, D. South Carolina.

March 21, 2000.

Amy Campbell Kelly, Mt. Pleasant, SC, for Kevin Campbell, Trustee.

Charles S. Bernstein, Charleston, SC, for William Deans, Hope Deans and Hope Real Estate, Ltd.

## ORDER

JOHN E. WAITES, Bankruptcy Judge.

THIS MATTER comes before the Court upon the Motion for Partial Summary Judgment by Defendants William Deans and Hope Deans and Defendant Hope Real Estate, Ltd., filed with the Court on December 9, 1999; and Hope Real Estate Second Motion for Partial Summary Judgment filed with the Court on December 13, 1999 (collectively the "Motions"). Defendants move for summary judgment pursuant to Federal Rule of Civil Procedure 56(c), made applicable to adversary proceedings under the Bankruptcy Code by Bankruptcy Rule 7056. Plaintiff filed a Memorandum in Opposition to Motions for Summary Judgment on December 23, 1999, taking the position that the Motions must be denied as there are genuine issues of material fact. Based upon the pleadings and the evidence presented at the hearing on the Motions, the Court makes the following Findings of Fact and Conclusions of Law pursuant to Rule 52 of the Federal Rules of Civil Procedure, made applicable by Rule 7052 of the Federal Rules of Bankruptcy Procedure.[1]

## FINDINGS OF FACT

1. J.R. Deans Company, Inc. ("Debtor") filed a voluntary petition under Chapter 11 of the United States Bankruptcy Code on September 24, 1997. On or about March 2, 1998, the case was converted to a Chapter 7.

2. Debtor, a corporation organized under the laws of South Carolina and engaging in the sale of industrial equipment and supplies, on a wholesale and retail basis, was started in 1961 by James Robert Deans, the father of Defendant William Deans.

3. In 1979, Debtor acquired ownership of the real estate on which the business is located and which is the subject of this adversary proceeding.

4. When James Robert Deans passed away, ownership of Debtor was divided among members of the Deans family and T.E. Pedersen, one of the original shareholders.

5. Subsequently, William Deans and his wife, Hope Deans, obtained 100% ownership interest in Debtor, and William Deans became Debtor's Chief Operating Officer.

6. One of Debtor's main customer was the Charleston Naval Shipyard. With the announcement of the imminent closing of the shipyard, the decision was made to change the direction of Debtor's business and to bring in new management to assist with the undergoing changes.

7. In the latter part of 1994, a decision was made to hire Emory Ware as Chief Operating Officer of Debtor. As a part of the negotiations leading up to the employment of Mr. Ware, it was determined that he would obtain an equity position in Debtor through an acquisition of stock shares. However, Mr. Ware was to have no ownership interest in Debtor's real estate.

8. The preliminary plan to pursue the goals related to the employment of Mr. Ware was to form a new corporation and to transfer all of Debtor's assets, including

---

1. The Court notes that to the extent any of the following Findings of Fact constitute Conclusions of Law, they are adopted as such, and to the extent any Conclusions of Law constitute Findings of Fact, they are so adopted.

the wholesale and retail supply business, to a newly formed corporation. Debtor's real estate would remain in Debtor's title while the "spin-off" company would continue Debtor's business. At the time the negotiations and plans for the "spin-off" were in progress, all parties were aware that Debtor had been named as a Defendant in over one hundred law suits in the 1970s and 1980s brought by persons who claimed to have been injured by asbestos contained in products sold by Debtor. Upon making the preliminary plans to create a new entity, concerns arose as to whether the proposed new entity would be able to obtain new liability insurance that would cover any new asbestos claims that might arise. Due to those concerns and for other reasons, the decision was made to transfer the real property to the new entity, leaving the remaining assets with Debtor and allowing Debtor to retain its liability insurance coverage against any asbestos litigation then in existence or which might have arisen in the future.[2]

9. A tax-free "spin-off" occurred and resulted in the formation of Hope Real Estate Limited ("HRE").

10. Defendants William and Hope Deans became the owners and principal officers of HRE.

11. By deed dated January 4, 1995 and recorded January 24, 1995, Debtor transferred its interest in the real estate to HRE.

12. The deed provides that the transfer of real estate from Debtor to HRE was "in consideration of the ... premises and the sum of three ($3.00) dollars ..." and further provides that the conveyance was "subject to an existing mortgage in favor of First Federal Savings and Loan Association of Charleston, Inc. ("First Federal") securing mortgaged indebtedness of approximately One Million One Hundred Six Thousand Sixty-One Dollars ($1,106,-061.00) of the Grantor."

13. First Federal did not provide Debtor with a written release of its liability under the existing loan referenced in the deed; however, on or about April 19, 1995, the real estate was refinanced by HRE, and any liability of Debtor on the property was extinguished by the refinance.

14. Following the transfers, William Deans acted as principal officer of both Debtor and HRE.

15. At the time of the transfer of the property from Debtor to HRE, several

---

**2.** The minutes of a Special Called Joint Meeting of Shareholders and Directors of J.R. Deans Company, Inc. held on December 23, 1994, a copy of which was attached to Plaintiff's Complaint, explains the motive behind the "spin-off" in more details. The minutes provide in pertinent part:

> Mr. Horton [tax attorney engaged by Debtor to make recommendations with respect to the proposed split of the company] then advised that ... he was of the opinion the Company should not risk "spinning-off" the industrial supply business division into a new subsidiary corporation, but that the company should take the opposite approach and spin-off its real estate assets into a newly formed subsidiary corporation, and thereafter distribute all of the stock in the real estate subsidiary corporation to the Company's present shareholders which would serve to accomplish the Company's primary objective of separating the industrial supply business division, in which Emory Ware would acquire an equity interest, from the Company's other assets in which he was not to acquire any equity ownership while (a) allowing the Company to retain its existing product liability and hazard insurance coverage on its industrial supply business with its present "first line" underwriter and (b) protect the Company's real estate assets from adverse claims in potential future asbestosis litigation by removing those assets from the Company in such a manner that the Company could still utilize same by leasing the required premises for its business activities from the newly formed real estate corporation, which would be owned by the Company's current shareholders.

asbestos lawsuits had been filed, naming Debtor as a defendant. Prior to the filing of Debtor's bankruptcy case, none of the asbestos litigation had resulted in a judgment against Debtor, nor had any settlement been made with any claimant which included any contribution by Debtor. Since the filing of the bankruptcy, more asbestos lawsuits have been filed naming Debtor as a defendant in the case; however, as of the date of the hearing on the Motions, no Proofs of Claim had been filed against the bankruptcy estate by any of the asbestos claimants despite the fact that they had notice of the bankruptcy filing.

16. The Trustee presented two Proofs of Claim, claims number 35 and 82, asserting that they represented debts incurred prior to the transfer of real estate which is the subject of this proceeding. The Proofs of Claim were filed by Halstead Industries, Inc. ("Halstead") and Mountain West d/b/a Office Depot Creditor ("Office Depot") and were in the amount of $7,960.48 and $266.72 respectively. Debtor's Credit Application in connection with Halstead's claim shows the date of the Application as May 23, 1988; and the Trustee claims that the creditor supplied materials to Debtor from that date forward. However, Halstead's Proof of Claim shows that its debt was incurred on August 2, 1996. This assertion is further supported by two invoices from Halstead to Debtor bearing invoice dates of 05/21/96 and 06/18/96. As for the Office Depot claim in the amount of $266.72, the Proof of Claim shows that the debt was incurred on February 1, 1994.

17. In his affidavit of December 22, 1999, Harvey P. Jeffers, an appraiser of commercial property with Integra Fitzhugh Stout and Associates, LLC; states that, based on his review of the corporate documents, prior appraisals and lease informa-tion, as well as his physical review, the real property transferred by Debtor to HRE had a value of at least $1.6 million as of the date of the conveyance. The valuation was derived by utilizing the market approach.

18. For the fiscal year ending April 30, 1993, Debtor's net operating income was $22,584.00. For the fiscal year ending April 30, 1994, Debtor's net operating income was $26,331.00. For the fiscal year ending April 30, 1995, Debtor suffered net operating losses of $34,890.00; however, its assets exceeded the total liabilities. In fact, the assets at that time were approximately $1,779,124 while the total debt was $1,211.649.00. For the fiscal year ending April 30, 1996, Debtor's net operating loss was $143,903.00. However, once again, the total assets of Debtor exceeded the total liabilities; while the total assets amounted to $2,565,304, the total liabilities of Debtor were $2,159,732. No evidence was presented indicating whether Debtor was solvent after April 30, 1996.

19. By conveying the subject real estate to HRE, Debtor became a tenant of HRE, and it made rental payments to HRE.

20. Debtor made the following payments to HRE within the one year preceding the filing of the bankruptcy petition:

| DATE OF PAYMENT | AMOUNT PAID [3] |
| --- | --- |
| 12/31/96 | $16,129.00 |
| 03/11/97 | $ 5,000.00 |
| 05/23/97 | $ 5,000.00 |
| 06/30/97 | $44,375.00 |

21. The Trustee filed a Complaint on July 14, 1999 alleging six Causes of Action against Defendants. In the First Cause of Action, asserted against HRE and William and Hope Deans, the Trustee has alleged that the transfer of real estate from Debtor to HRE was a transfer in actual fraud of creditors under S.C.CODE ANN. § 27–23–10 and 11 U.S.C. § 544.[4] In the Sec-

---

3. From the date of the transfer in 1995 until October 31, 1996, rent was paid in a timely manner. However, commencing in November 1996, Debtor began to default on its monthly rent, and the payments that were made in the following months reflect inconsistent amounts due to Debtor's partial pay-ments of its monthly rent as well as its attempts to catch up the rental arrearage.

4. Further references to the Bankruptcy Code or to the South Carolina Code shall be by section number only.

ond Cause of Action, asserted against HRE and William and Hope Deans, the Trustee has alleged that the transfer of real estate from Debtor to HRE constitutes a constructively fraudulent transfer, in violation of § 27–23–10 and § 544. The remaining causes of action are only asserted against HRE. In the Third Cause of Action, the Trustee has asserted that the payments of Debtor toward the rent of the business facility constitute preferential transfers pursuant to § 547. In the Fourth Cause of Action, the Trustee has asserted that the payments toward the accumulated rent constitute a fraudulent conveyance pursuant to § 548. In the Fifth Cause of Action, the Trustee has asserted that the rent payments made during the year before the bankruptcy filing to HRE are in violation of the anti-assignment statute set forth in § 27–25–10. Finally, in the Sixth Cause of Action, the Trustee has requested an accounting from HRE in connection with any payments that HRE received from Debtor.

22. On December 9, 1999, Defendants William and Hope Deans moved for Summary Judgment as to all causes of action asserted against them, and HRE moved for Summary Judgment as to the First and Second Causes of Action. On December 13, 1999, HRE filed a Second Motion for Partial Summary Judgment as to the Third, Fourth, and Fifth Causes of Action.

23. Defendant First Federal has previously been dismissed from this adversary proceeding.

## CONCLUSIONS OF LAW

### 1. Standard for Summary Judgment

Rule 56(c) of the Federal Rules of Civil Procedure, made applicable to adversary proceedings under the Bankruptcy Code by Bankruptcy Rule 7056, provides that a party may move for summary judgment and that such judgment "shall be rendered forthwith" if the evidence and pleadings "show that there is no genuine issue as to any material fact" and that the moving party is "entitled to a judgment as a matter of law." Fed.R Civ.Pro. 56(c); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). One of the main purposes of Fed. R.Civ.P. 56(c) is to "isolate and dispose of factually unsupported claims or defenses." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–24, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).

The Supreme Court has emphasized that, when considering a motion for summary judgment, a court must assess the inferences from not only the depositions, but also documentary material, in the light most favorable to the nonmoving parties. *United States v. Diebold, Inc.*, 369 U.S. 654, 655, 82 S.Ct. 993, 8 L.Ed.2d 176 (1962). "[S]ummary judgment will not lie if the dispute about a material fact is genuine, that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248, 106 S.Ct. 2505; *see also Glover v. Lockheed Corp.*, 772 F.Supp. 898, 904 (D.S.C.1991) (quoting *Anderson*, 477 U.S. at 249, 106 S.Ct. 2505) (" '[T]here is no issue for trial unless there is sufficient evidence favoring the non-moving party for a jury to return a verdict for that party....If the evidence is merely colorable ... 'or is not significantly probative, summary judgment may be granted.' ").

The burden is on the moving party, in this case Defendants, to show that there is not a genuine issue of material fact. *See Temkin v. Frederick County Com'rs*, 945 F.2d 716, 718 (4th Cir.1991). It is not until the movant has proven the absence of any genuine issue of material fact that the burden of proof shifts, and "the party opposing summary judgment may not merely rely on his pleadings but must set forth specific facts which controvert the moving party's facts and which show the existence of a genuine issue for trial." *Dunes Hotel Assoc. v. Hyatt Corp. (In re Dunes Hotel Assoc.)*, 194 B.R. 967, 976 (Bankr.D.S.C. 1995). Summary judgment should be granted "against a party who fails to make a showing sufficient to establish the evi-

dence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Id.* (citing *Celotex,* 477 U.S. at 322, 106 S.Ct. 2548).

**2. First and Second Causes of Action— Fraudulent Transfers Pursuant to § 27–23–10 and § 544.**

In the First Cause of Action, the Trustee alleges that the transfer of the subject real estate from Debtor to HRE was a result of the pending asbestos litigation and was made with the intent to hinder, delay or defraud Debtor's creditors. Furthermore, constructive fraud is alleged in the Second Cause of Action, and the Trustee asserts that Debtor did not receive reasonable equivalent value in exchange for the transfer of the real estate to HRE and that, as a result of the transfer, Debtor was left with insufficient money or assets to pay its creditors. Defendants deny that the transfer was fraudulent under applicable state law and further assert that the Trustee lacks standing to assert the cause of action, and that the claim is barred by the applicable statute of limitations.

**A. Standing**

The Trustee in this action seeks to avoid the transfer of the real estate from Debtor to HRE pursuant to § 544(b) which provides in pertinent part:

(1) Except as provided in paragraph (2), the trustee may avoid any transfer of an interest of the debtor in property or any obligation incurred by the debtor that is voidable under applicable law by a creditor holding an unsecured claim that is allowable under section 502 of this title or that is not allowable only under section 502(e) of this title.

Section 544 does not establish substantive provisions for the avoidance of transfers; rather, it merely gives the Trustee the status of a creditor under state law and allows nonbankruptcy law to determine the rights that accrue as a result of that created status. *Memory v.*

*Jefferson Fed. Sav. & Loan (In re Fair),* 28 B.R. 160, 162 (Bankr.M.D.Ala.1983) (noting the two-pronged step of section 544: "First, the trustee or the debtors must exercise the rights under section 544(b) of an unsecured creditor with an allowable claim. Second, such an unsecured creditor must have the right under the state law to avoid a transfer"); *In re Lang,* 5 B.R. 371, 374 (Bankr.S.D.N.Y. 1980) ("Section 544(b) ... chains the trustee to the rights a creditor would have to void fraudulent transfers under applicable local law, absent bankruptcy. This section, unlike Section 548, gives the trustee no independent power to challenge an allegedly invalid transfer."). The existence of the Trustee's rights generated by § 544(b) are dependent on the rights of actual creditors possessing claims that are allowable in bankruptcy. *See, e.g., Campbell v. Haddock (In re Haddock),* 246 B.R. 810 (Bkrtcy.D.S.C.2000); Adv. Pro. 99–80266–W (Bankr.D.S.C.01/14/00); *Campbell v. Wellman (In re Wellman),* C/A. No. 97–01350–W; Adv. Pro. No. 97–80304–W (Bankr.D.S.C.06/02/1998). Thus, the initial determination to be made by the Court is "whether there is a creditor with an allowed claim in this case who provides the Trustee standing to assert the Statute of Elizabeth action." *In re Haddock,* page 814.

Section 27–23–10 of the South Carolina Code, commonly referred to as the Statute of Elizabeth, provides in pertinent part:

Every ... conveyance of lands, tenements or hereditaments, goods and chattels or any of them ... by writing or otherwise ... which may be had or made to or for any intent or purpose to delay, hinder, or defraud creditors and others of their just and lawful actions, suits, debts, accounts, damages, penalties, and forfeitures must be deemed and taken ... to be clearly and utterly void, frustrate and of no effect, any pretense, color, feigned consideration, expressing of use, or any other matter or thing to the contrary notwithstanding.

S.C.CODE ANN. § 27–23–10 (Law.Co-op. Supp.1999).

■ In South Carolina, fraudulent transfers may be set aside by existing as well as subsequent creditors. *See, e.g., Mathis v. Burton*, 319 S.C. 261, 460 S.E.2d 406, 408 (Ct.App.1995). Existing creditors may avoid transfers under an actual fraudulent transfer theory or under a constructive fraud theory. Under an actual transfer theory, the transfer will be set aside if the plaintiff can establish three things: "(1) the transfer was made by the grantor with the actual intent of defrauding his creditors; (2) the grantor was indebted at the time of the transfer; and (3) the grantor's intent is imputable to the grantee." *Mathis*, 460 S.E.2d at 408 (quoting *Durham v. Blackard*, 313 S.C. 432, 438 S.E.2d 259, 262 (Ct.App.1993)); *see also Future Group, II v. Nationsbank*, 324 S.C. 89, 478 S.E.2d 45, 48–49 (1996) (citing *Gardner v. Kirven*, 184 S.C. 37, 191 S.E. 814 (S.C. 1937)); *Coleman v. Daniel*, 261 S.C. 198, 199 S.E.2d 74, 79 (1973); *In re Haddock*, page 814.

■ Under the constructive theory, where a transfer was made without valuable consideration being exchanged, no actual intent to hinder or defraud creditors has to be proven. Instead, courts have held that in such situations, the transfer would be set aside if the creditor establishes that:

(1) the grantor was indebted to him at the time of the transfer; (2) the conveyance was voluntary; and (3) the grantor failed to retain sufficient property to pay the indebtedness to the plaintiff in full— not merely at the time of the transfer, but in the final analysis when the creditor seeks to collect his debt.

*Mathis*, 460 S.E.2d at 408 (quoting *Durham*, 438 S.E.2d at 262).

In a recent opinion issued by the Supreme Court for the State of South Carolina, the court, in answering a certified question, addressed the issue of whether inadequate consideration would support a conclusion that the transfer was voluntary; thus making it a voidable transfer. *Royal Z Lanes, Inc. v. Collins Holding Corp.*, 337 S.C. 592, 524 S.E.2d 621 (Dec. 6, 1999). *Royal Z Lanes* overruled the South Carolina Court of Appeals' holding in *Dufresne v. Regency Realty, Inc.*, 295 S.C. 1, 366 S.E.2d 256 (Ct.App.1987) in which the court held that grossly inadequate consideration was sufficient to set aside a conveyance "to the extent of the value of the property transferred less any consideration received in exchange therefor," even without a showing of actual intent to defraud. *Id.* at 258. In *Royal Z Lanes*, the transferee paid $195,389.00 for property worth over $1 million. The court noted:

In *Jeffords v. Berry*, [247 S.C. 347, 147 S.E.2d 415 (S.C.1966)] , we found that "grossly inadequate" consideration is "a strong badge of fraud" but we specifically rejected the argument that gross inadequacy of consideration reduces the conveyance to the status of one made without consideration, concluding "gross inadequacy of consideration and 'without consideration' are not synonymous in the law." Under *Jeffords*, where there is gross inadequacy of consideration, an actual intent to defraud must still be shown to set aside the conveyance as fraudulent.

*Id.* at 22, 366 S.E.2d 256 (citations omitted). The court ultimately overruled *Dufresne* but left for the certifying court to consider "whether a remand to the factfinder is necessary to determine if, in light of this rebuttal presumption, actual intent to defraud is established." *Id.* at 23, 366 S.E.2d 256.

■ In the case where subsequent creditors are trying to avoid a fraudulent conveyance, the analysis is slightly different. As *Mathis v. Burton* set forth, "[s]ubsequent creditors may have conveyances set aside when (1) the conveyance was 'voluntary,' that is, without consideration, and (2) it was made with a view to future indebtedness or with an actual fraudulent intent on the part of the grantor to defraud credi-

tors." *Mathis v. Burton*, 460 S.E.2d at 408 (citing *Gentry v. Lanneau*, 54 S.C. 514, 32 S.E. 523 (1899)).

As stated above, the initial issue before this Court is whether there are any creditors, either existing at the time of the subject transfer or subsequent to the transfer, with an allowable unsecured claim that would provide the Trustee standing to pursue the Statute of Elizabeth action, under either an actual or constructive fraud theory. The Trustee argued that the asbestos claimants who filed state court actions against Debtor were clearly creditors in existence at the time that the subject transfer occurred. Furthermore, the Trustee argues that he has also satisfied the existing creditor requirement by producing the claims of Halstead and Office Depot. The Court finds that the only creditor with an allowable claim who can provide the Trustee with standing to assert the first two causes of action in this adversary proceeding is Office Depot.

■ The Trustee argues that many asbestos complaints were filed prior to the transfer and several have been filed since the commencement of the related bankruptcy case. As of the date of the hearing on the Motions, despite having notice of the Bankruptcy, no such claimant had filed any Proofs of Claim against the bankruptcy estate. However, the Trustee argues that, in a letter from Nancy Worth Davis, the claimant's attorney, she indicated that she was going to file a motion to allow late filings of Proofs of Claim on behalf of these claimants. The Court finds that the Trustee's speculations as to the fact that the asbestos claimants were clearly creditors in existence at the time that the transfer occurred is insufficient to confer standing upon the Trustee to assert the Statute of Elizabeth claim. As previously discussed in this Order, under the provisions of § 544, the Trustee may assert the position of a creditor in the bankruptcy to avoid a transfer; however, by the express terms of the section, it must be a right which could be asserted by "a creditor

holding an unsecured claim that is allowable under section 502 of this title." To this date, none of the asbestos claimants referred to by the Trustee have filed an allowable claim against Debtor in this bankruptcy case; therefore, they do not have the status of either existing nor subsequent creditors which could confer standing upon the Trustee.

■ The Trustee also argues that he has satisfied the existing creditor requirement by producing the claims of Halstead and Office Depot. The Court finds that Halstead was not an existing creditor at the time of the transfer. The Trustee argues that a review of the Proof of Claim filed by Halstead shows that a Credit Application was submitted by Debtor to Halstead and was dated May 23, 1988. Due to the fact that the Credit Application bore a date which was several years prior to the subject transfer, the Trustee argues that it could be inferred that the creditor supplied materials to Debtor from that point forward. The Trustee's speculations; however, are contradicted by the Proof of Claim itself and the invoices on which the Proof of Claim is based. In fact, the Proof of Claim, which was for the total amount of $7,960.48 and includes the payment due by Debtor for goods sold on two invoices, reflects that the debt was incurred on August 2, 1996. The first invoice, dated May 21, 1996, is in the amount of $3,085.85; while the second invoice, dated June 18, 1996, is for the amount of $4,874.63. Therefore, the Court finds that Halstead was not an existing creditor which could confer upon the Trustee standing to pursue the Statute of Elizabeth action against Defendants.

■ The Court finds that the only creditor who has an allowable Proof of Claim and who existed at the time of the subject transfer is Office Depot, who filed a Proof of Claim on March 16, 1998 in the amount of $266.72. Thus, only one creditor to whom Debtor was indebted existed on the date of the transfer at issue. The

Court finds that there are no subsequent creditors who could provide the Trustee standing to assert the Statute of Elizabeth action; the Trustee has not presented any evidence of a creditor to whom Debtor became indebted after the transfer but whose claim was foreseen by Debtor prior to the alleged fraudulent transfer.

## B. Statute of Limitations

▮▮▮▮ Defendants have pled the Statute of Limitations as a bar to the assertion of the fraudulent conveyance action in this case.[5] The relevant statute of limitations is established in S.C.CODE ANN. § 15–3–530(7) which provides that the three years statute of limitations is applicable to

> any action for relief on the ground of fraud in cases which prior to the adoption of the Code of Civil Procedure in 1870 were solely cognizable by the court of chancery, the cause of action in the case not consider to have accrued until the discovery by the aggrieved party of the facts constituting the fraud.

S.C.CODE ANN. § 15–3–530(7) (Law.Co-op.Supp.1999). In South Carolina, the statute of limitations for causes of actions for fraud, including the Statute of Elizabeth, is governed by the "discovery rule" which provides that the statute of limitations "does not begin to run until discovery of the fraud itself or of 'such facts as would have led to the knowledge thereof, if pursued with reasonable diligence.' " *Burgess v. The American Cancer Society*, 300 S.C. 182, 386 S.E.2d 798, 799 (Ct.App.1989) (citing *Grayson v. Fidelity Life Ins.*, 114 S.C. 130, 103 S.E. 477 (1920)); *see also Walter J. Klein Co. v. Kneece*, 239 S.C. 478, 123 S.E.2d 870, 873–74 (1962) ("[A]n action to set aside a conveyance of lands made con-

trary to Section 57–301 of the 1952 Code [presently § 15–3–530]must be instituted within six years and the cause of action in such case is not deemed to have accrued until the discovery by the aggrieved party of the facts constituting the fraud.... Under the cited section, the six year period begins to run at the time of the acquisition of knowledge of such facts that are sufficient to put the party on inquiry which, if developed, will disclose the alleged fraud.").

The issue to be resolved by this Court is at what point in time creditors, and more specifically Office Depot, the only creditor that can provide the Trustee with standing to assert the fraudulent conveyance action, acquired knowledge of facts that would give them an indication of the fraudulent nature of the subject transfer. Defendants argue that the deed from Debtor to HRE recorded with the Register of Mesne Conveyances on or about January 24, 1995, provided constructive notice of the transfer. If the deed did, in fact, provide creditors with constructive notice of the alleged fraudulent transfer; then, applying the three year statute of limitations, any action attacking the transfer under the Statute of Elizabeth should have been instituted before January 24, 1998, thus barring the first two causes of action in this case. However, the Court finds that, in this case, the deed did not serve as constructive notice to the creditor. Courts in various jurisdictions have held that registration of a deed, by itself, is not sufficient to put a creditor on constructive notice of a fraudulent transfer. *See, e.g., Crescent v. White*, 88 Nev. 71, 493 P.2d 1323, 1323 (1972) (quoting *In re Wilson's Estate*, 56 Nev.

---

5. The Trustee argues that the parties to the action had previously signed a Consent Order tolling the applicable statute of limitations, thus waiving the defense. However, the Consent Order Tolling Statute of Limitations, entered by the Court on April 16, 1999, approves the agreement of the parties that "the Statute of Limitations applicable to the Trustee's claims against these Parties *under 11 U.S.C. § 546* be extended for a three (3) month period, to July 20, 1999, in order to allow the Trustee to continue to negotiate a potential settlement of the claims and to obtain an Order Approving the Settlement." (Emphasis added). Thus, it is implicit from the language of the Order that the only statute of limitations tolled was the one set forth in § 546. The Order did not approve any extension for the Statute of Limitation set forth in § 15–3–530.

500, 56 P.2d 1207, 1208 (1936)) (holding that the recordation of debtor's deed was not constructive notice to creditors so as to commence running of limitations on action to set aside fraudulent conveyance and noting that "'the statute of this state concerning records ... is not intended to impart notice other than to subsequent purchasers and mortgagees'"); *Villa Nat'l Bank v. Green*, 478 P.2d 681, 683 (Colo.Ct. App.1970) (quoting *Gillett v. Gaffney*, 3 Colo. 351) ("That the record of a deed is constructive notice to all the world, is too broad an enunciation of the doctrine. Such record is constructive notice only to those who are bound to search for it as subsequent purchasers and mortgagees, and all others who deal with it on the credit of the title in the line of which the recorded deed belongs."); *Elliott v. Goss*, 250 N.C. 185, 108 S.E.2d 475, 477 (1959) ("[A] cause of action for fraud does not accrue and the statute of limitations does not begin to run until the facts constituting the fraud are known or should have been discovered in the exercise of due diligence, and the mere registration of a deed, standing alone, will not be imputed for constructive notice."); *Means v. Feaster*, 4 S.C. 249 (1873) ("The recording of the deeds is only notice of their execution and the contents."); *ASA Godbold v. Lambert*, 29 S.C. Eq. 155 (Ct.App.Eq.1856) ("If notice of the deed is notice of the fraud, the plaintiff is barred. But that proposition cannot be sustained. There is no rationality in it. Fraudulent deeds are always fair on their face. Parties, about to commit a fraud, do not blaze on it upon the face of the deed, and invite the gaze of the world by spreading it upon the books of the Register. On the contrary, fraud most carefully masks its horrid and revolting features, whilst in all its external forms and showings it assumes the semblance of purity and justice. This difficulty out of the way, the Court is of the opinion that the registry of a deed is only implied notice of its contents, and not of any fraud that may have been perpetrated in its execution.").

Not only have various jurisdictions held that recording of a deed was not constructive notice to creditors in a fraudulent conveyance action, but S.C.CODE ANN. § 30–7–10 (Law.Co-op.Supp.1999) also provides that "[a]ll deeds of conveyance of lands, tenements, or hereditaments ... are valid so as to affect the rights of *subsequent creditors ... or purchasers for valuable consideration* without notice, only from the day and hour when they are recorded in the office of the register of deeds or clerk of court." (Emphasis added). In this case, the only evidence that the property had been transferred from Debtor to HRE consisted of the deed being recorded. Debtor remained on the property and continued to do business at the same address, and no notice was provided by Defendants to creditors of the transfer of the real estate to the subsidiary corporation. Office Depot, the only existing creditor at the time of the subject transfer which confers standing on the Trustee in this case to pursue the Statute of Elizabeth cause of action, was not a mortgagee, a subsequent purchaser, or a subsequent creditor on whom notice could be imparted pursuant to § 30–7–10. Office Depot is a small unsecured creditor with a proof of claim in the amount of $266.72, a nominal amount in comparison to Debtor's total indebtedness. Furthermore, Office Depot's claim was in no way secured by the real estate in question, and it would be "irrational," as held by the court in *Godbold v. Lambert*, to find that the notice of the deed is notice of the alleged fraudulent transfer, thus barring the action under the Statute of Elizabeth.

Additionally, the Court has not otherwise been presented with sufficient facts to make a determination as to when Office Depot's right to institute an action on the debt may have begun to run. *See Campbell v. Wellman (In re Wellman)*, C/A No. 97–01350–W, Adv. Pro. 97–80304–W (06/02/1998). Therefore, the Court finds that because the recordation of the deed, which took place on January 24, 1995, did not confer constructive notice to the credi-

tor and because no evidence has been presented as to when the creditor may have acquired knowledge of the alleged fraudulent nature of the transfer, the First and Second Causes of Action that the Trustee asserts against Defendants are not barred by the Statute of Elizabeth pursuant to § 15-3-530.

## C. Fraudulent Transfer

The next issue to be determined is whether the transfer of the real estate from Debtor to HRE constitutes a voidable fraudulent conveyance. The standard for finding actual and constructive fraud in South Carolina is the clear and convincing evidence standard. *See, e.g., First Union Nat'l v. Smith*, 314 S.C. 459, 445 S.E.2d 457, 459 (Ct.App.1994); *see also Campbell v. Haddock (In re Haddock)*, 246 B.R. 810 (Bkrtcy.D.S.C.2000); Adv. Pro. 99-80266-W (Bankr. D.S.C.01/14/00). The burden of proving fraud is normally on the plaintiff; however, "[w]here transfers to members of the family are attacked either upon the ground of actual fraud or on account of their voluntary character, the law imposes the burden on the transferee to establish both a valuable consideration and the bona fides of the transaction by clear and convincing testimony." *First Union Nat'l*, 445 S.E.2d at 458. This Court finds that in this case, there was no inter-family transfer at issue, thus the burden remains with the Trustee to prove that the subject transfer was a fraudulent conveyance.

Defendants have asserted that the Trustee cannot show that the transfer was fraudulent, because it was not made with the intent to defraud creditors, was made for valuable consideration, and Debtor retained sufficient assets to pay creditors after the transfer. The Trustee, on the other hand, argues that both the actual fraud and constructive fraud standards are met. After reviewing the evidence submitted by the parties, the Court concludes that there is insufficient evidence of any actual or constructive fraud and, because

there is no genuine issue of material fact as to the First and Second Causes of Action, summary judgment as to those causes should be granted in favor of Defendants.

As stated above, in construing the fraudulent conveyance statute, the South Carolina Supreme Court has held that under the Statute of Elizabeth:

conveyances shall be set aside under two conditions: First, where the transfer is made by the grantor with the actual intent of defrauding his creditors where that intent is imputable to the grantee, even though there is a valuable consideration; and, second, where a transfer is made without actual intent to defraud the grantor's creditors, but without consideration.

*Windsor Properties, Inc. v. Dolphin Head Constr., Co.*, 331 S.C. 466, 498 S.E.2d 858 (1998); *see also Mathis v. Burton*, 319 S.C. 261, 460 S.E.2d 406, 408 (Ct.App.1995). As to the issue of actual fraud, the Trustee argues that there are sufficient "badges of fraud" in this case to raise a genuine issue of material fact and to prohibit Defendants from being entitled to a judgment as a matter of law. The "badges of fraud" to be considered are the following:

[T]he insolvency or indebtedness of the transferor, lack of consideration for the conveyance, relationship between the transferor and the transferee, the pendency or threat of litigation, secrecy or concealment, departure from the usual method of business, the transfer of the debtor's entire estate, the reservation of benefit to the transferor, and the retention by the debtor of possession of the property.

*Coleman v. Daniel*, 261 S.C. 198, 199 S.E.2d 74, 79 (1973). The Trustee has pointed to several facts which, in his estimation, are indications of fraud and are thus sufficient to avoid summary judgment. Specifically, the trustee asserts that no notice of the transfer of the real estate was provided to creditors. However, the Court finds that there is no re-

quirement of any notice to any creditors when real property is transferred by a corporation to a subsidiary. The Trustee further argues that Debtor's knowledge of the pending asbestos claimants and the threat of any future asbestos litigation led to the transfer of the real estate to HRE in order to shield the property. The Court finds that this allegation is not supported by the evidence presented. As established by affidavits and by the minutes of a Special Called Joint Meeting of Shareholders and Directors of Debtor, held on December 23, 1994; the "spin-off," which occurred and resulted in the creation of HRE and the transfer of the real estate, was a result of negotiations with other objectives in mind beside the pendency or threat of asbestos litigation. The "spin-off" and the transfer of Debtor's real estate to HRE was mainly a result of the undergoing changes in Debtor's management. During the negotiations to hire Emory Ware as Debtor's new Chief Executive Officer, it was determined that Mr. Ware was to have an interest in Debtor's stock but was to have no interest in Debtor's real estate. When considering other issues such as liability insurance and taxation, it was concluded that the best way to carry out the main goal was to create a subsidiary, HRE, which would own Debtor's real estate and would charge Debtor rent for its use.

When considering the remaining "badges of fraud," the Court finds that Debtor only transferred a portion of its assets. Debtor only transferred the real property to the new subsidiary, while leaving Debtor's remaining assets with Debtor. The fact that Debtor became a tenant of HRE following the transfer is likewise no evidence of fraudulent intent against creditors. The Trustee has submitted no evidence that the rental paid for the property was above the fair market rent for the property occupied, and thus no inference arises of an intent to divert money from creditors.

As to the insolvency or indebtedness of the transfer, the Court finds that for over a year after the transfer, the financial records show that the value of Debtors' assets exceeded its debts. It is apparent that, for a substantial time after the transfer, Debtor was meeting its obligations as they came due. The fact that the unsecured debt rose substantially after the transfer and that company had a downturn in its financial condition some time thereafter is not clearly indicative of fraudulent intent, especially when considering the fact that around that time one of Debtor's main customers, the Charleston Naval Shipyard, closed down. Finally, the court notes that Office Depot, the only creditor that grants the Trustee standing to pursue the first two causes of action in his Complaint, had such a nominal claim that it cannot be argued that Debtor was trying to evade its debt with Office Depot. For the foregoing reasons, the Court finds no evidence of intent to defraud creditors on the part of Debtor.

■ The second basis upon which a court may find a fraudulent transfer is in the case of a voluntary transfer, that is a conveyance for no valuable consideration. The deed which evidences the transfer of the real estate between Debtor and HRE states that the conveyance was in consideration for $3.00 and was "subject to an existing mortgage in favor of First Federal Savings and Loan Association of Charleston, Inc." in the amount of $1,106,061.00. Even though First Federal did not provide Debtor with a written release of its liability under the existing loan, the real estate was refinanced in April of 1995, and any liability of Debtor on the property was extinguished.[6] The Trustee argues that

---

6. In their deposition, both David Jackson, Debtor's Certified Public Accountant, and Lewis Horton, counsel in tax related matters, testified that HRE assumed First Federal's loan upon the transfer of the real estate and

that, as a result of the transfer, Debtors' financial sheet, post "spin-off," reflected that the debt to First Federal was eliminated. Even though the Court was presented with conflicting evidence as to whether the mort-

the consideration received by Debtor for the transfer was grossly inadequate. The Trustee's expert, Mr. Jeffers, valued the property at a minimum of $1.6 million at the time of the transfer. Even accepting the evidence offered by the Trustee, the Court finds that, if anything, the transfer was in exchange for some consideration, although potentially inadequate consideration. As previously discussed in this Order, a recent case decided by the South Carolina Supreme Court has emphasized that, in the case of inadequate consideration, actual intent to defraud creditors must still be proven. *See, e.g., Royal Z Lanes, Inc. v. Collins Holding Corp.*, 337 S.C. 592, 524 S.E.2d 621 (1999). The Court has already found that no actual intent to defraud was present in the subject transfer. The alleged inadequacy of the consideration is not a basis for a finding of constructive fraud; therefore, the Second Cause of Action based on constructive fraud cannot stand.

The Court finds that there are no material issues remaining in the First and Second Causes of Action alleged by the Trustee against HRE and William and Hope Deans; therefore, the Court grants summary judgment on those two causes of action.

### 3. Preferential Transfer—Section 547

■ The Third Cause of Action that the Trustee alleges against HRE involves the four rent payments made by Debtor to HRE between December 31, 1996 and June 30, 1997. Debtor began occupying the premises after January 24, 1995 and continued to occupy them through the date of the filing of the Chapter 11 proceeding on September 24, 1997. The Trustee has sought the return of the payment of December 31, 1996 in the amount of $16,129.00; the payment of March 11, 1997 in the amount of $5,000; the payment of May 23, 1997 in the amount of $5,000; and the payment of June 30, 1997 in the amount of

$44,300.75. The Trustee seeks the return of these payments from HRE, asserting that they were preferential transfers pursuant to § 547(b). As discussed below, the Court finds that genuine issues of material fact remain; thus, the Court denies HRE's motion for summary judgment on the Third Cause of Action.

Section 547(b) provides the trustee with the authority to avoid any pre-petition transfer which meets the requirements outlined in the section. Pursuant to § 547(g), the trustee bears the burden to prove all the requirements set forth in § 547(b). More particularly, § 547(b) provides in pertinent part:

Except as provided in subsection (c) of this section, the trustee may avoid any transfer of an interest of the debtor in property—

(1) to or for the benefit of a creditor;

(2) for or on account of an antecedent debt owed by the debtor before such transfer was made;

(3) made while the debtor was insolvent;

(4) made—

(A) on or within 90 days before the date of the filing of the petition; or

(B) between ninety days and one year before the date of the filing of the petition, if such creditor at the time of such transfer was an insider; and

(5) that enables such creditor to receive more than such creditor would receive if—

(A) the case were a case under chapter 7 of this title;

(B) the transfer had not been made; and

(C) such creditor received payment of such debt to the extent provided by the provisions of this title.

■ Section 547(f) provides that "for the purpose of this section, the debtor

gage was fully assumed by HRE or whether debtor's obligation was not extinguished until

the loan was refinanced, the discrepancies do not affect the holding of the case.

is presumed to have been insolvent on and during the 90 days immediately preceding the date of the filing of the petition." "The presumption requires the party against whom the presumption exists to come forward with some evidence to rebut the presumption, but the burden of proof remains on the party in whose favor the presumption exists." *Campbell v. Cannington (In re Economy Milling Co., Inc.)*, 37 B.R. 914, 915 (D.S.C.1983). Pursuant to § 547(g), the Trustee has the burden of proving by a preponderance of the evidence every requirement of § 547(b). Thus, although § 547(f) creates a presumption of insolvency during the 90 days preceding the commencement of the bankruptcy case, the Trustee still has the ultimate burden of proving insolvency in the case of "insiders" which extends the preference period to one year prior to the commencement of the bankruptcy case.

In the case before the Court, the only payment in question which occurred within the 90 day preference period is the payment remitted on June 30, 1997. As to that payment, there is a presumption that Debtor was insolvent on the date of the transfer to HRE. Defendant should have rebutted the presumption by presenting evidence of Debtor's solvency as to that date but has failed to do so. Thus the only issue that the court needs to consider is whether a genuine issue of material fact remains due to Defendant's raising the "new value" defense as set forth in § 547(c)(4). As to the remaining three payments which took place outside of the 90 day preference period but which were remitted within one year prior to the commencement of the bankruptcy case, the Trustee bears the burden to prove that Debtor was insolvent as to those dates, but no evidence was presented to the Court as to the issue of insolvency on the dates of those transfers. First of all, the Court finds that a genuine issue of material fact exists as to whether the one year "insider" rule applies. Second, the Court finds that Defendant has failed to show by evidence and pleadings that Debtor was solvent on

the three relevant payment dates; and, as a result, the Trustee has failed to respond to the issue. Therefore, the Court finds that summary judgment as to the three payments that took place within one year of the filing of the bankruptcy case is improper because Defendant failed to prove the absence of any genuine issue of material fact.

■ In defense to the preferential transfer action, Defendant claims that the Trustee's avoidance power is excepted pursuant to § 547(c)(4). Section 547(c)(4) provides that a trustee cannot avoid a transfer, even though it meets the requirements of a preferential transfer under § 547(b), if the transfer was:

(4) to or for the benefit of a creditor, to the extent that, after such transfer, such creditor gave new value to or for the benefit of the debtor—

    (A) not secured by an otherwise unavoidable security interest; and

    (B) on account of which new value the debtor did not make an otherwise unavoidable transfer to or for the benefit of such creditor.

Section 547(c)(4) creates an exception to the avoidance power that the Trustee has on preferential transfers in situations where a creditor provides new value *after* the preferential transfer is made but prior to the filing of debtor's bankruptcy petition.

To "the extent" that the transferee gives "new value to or for the benefit of the debtor" on an unsecured basis after receiving a preferential transfer, the otherwise preferential payment will not be voidable; "in other words, even though a creditor has received a preference . . . , the creditor may still offset [against a preference claim] any subsequent unsecured credit which was extended to the debtor."

5 *Collier on Bankruptcy*, ¶ 547.04[4] (15th ed. rev.1997) (footnotes omitted). Applying the defense found in § 547(c)(4) is a

multiple step process. First, there must be a transfer which meets the requirements of § 547(b). Second, following the preferential transfer, the creditor must give new value or advance something to the debtor on an unsecured basis. Finally, the advanced new value must be fully or partially unpaid as of the date of the filing of the petition. *See* 5 *Collier on Bankruptcy*, ¶ 547.04[4] (15th ed. rev.1997); *see also Southern Technical College, Inc. v. Hood*, 89 F.3d 1381, 1386 (8th Cir.1996) ("Even though we have concluded that Graham and Hood provided new value to STC, our inquiry is not at an end. In order to fit within the exception carved out by § 547(c)(4), a preferential transfer must be both unpaid for and unsecured.... [I]f the new value conferred upon STC by the lessor, consisting of close to two months of free rent, exceeded the amount of the February-rent payment plus the security deposit, then the amount of the February-rent payment is not recoverable as a preference.").

The Court finds that an issue of material fact exists as to whether HRE is an "insider" as the term is defined in § 101(31)(B).[7] If HRE is not an insider, the preference period would have started on June 26, 1997; only leaving the payment of June 30, 1997 open to the Trustee's claim under § 547(b). Section 101(31) provides, in pertinent part, that the term "insider" includes: "(B) if the debtor is a corporation—(I) director of the debtor; (ii) officer of the debtor; (iii) person in control of the debtor; (iv) partnership in which the debtor is a general partner; (v) general partner of the debtor; or (vi) relative of a general partner, director, officer, or person in control of the debtor." The Trustee

argues that there are sufficient material facts in dispute to deny Defendant's requests for summary judgment as to the payments in question. The Trustee emphasizes that in this case, the relationship between Debtor and HRE was so close so as to essentially deem HRE one and the same as William and Hope Deans. Furthermore, because William Deans admittedly managed and handled the financial affairs of HRE while still owning an interest in Debtor and participated in the daily activities of Debtor, he clearly had some influence over how Debtor's finances were directed. Defendant, on the other hand, argues that the affidavits and depositions show that William Deans was not a person in control of Debtor at the time the payments were made. Furthermore, Defendant argues that, while William Deans had a 10% shareholder's interest in Debtor on the date of the contested payments, the Trustee has made no showing that William Deans exercised control over Debtor at the time of the payments.

Courts have interpreted that the definition of "insider" as set forth in § 101 is not exhaustive. *See, e.g., Butler v. David Shaw, Inc.*, 72 F.3d 437, 443 (4th Cir.1996); *Hunter v. Babcock (In re Babcock Dairy Co.)*, 70 B.R. 685 (Bankr. N.D.Ohio 1986) ("It is well established that the term insider is not necessarily confined to those entities set forth in [§ 101(31)]."). As the court in *Butler* stated, "an insider may be any person or entity whose relationship with the debtor is sufficiently close so as to subject the relationship to careful scrutiny." *Butler*, 72 F.3d at 443 (citing *Hunter*, 70 B.R. at 666). In order to satisfy this standard, "the alleged insid-

---

7. The Court notes that if William Deans owed 20% or more of Debtor's company, the result would change. In fact, as held in the case of *Kroh Brothers Dev. Co. v. United Missouri Bank (In re Kroh Brothers Dev. Co.)*, 137 B.R. 332 (W.D.Mo.1992), a person who owned more than 20% of debtor company was an "affiliate" pursuant to § 101(2), and bank, which was an "insider" of the person as the person was the director of the bank, was an

"insider of Debtor because § 101(31)(E) provides that the term "insider" includes "affiliate, or insider of an affiliate." *See also, Butler v. David Shaw, Inc.*, 72 F.3d 437, 441 (4th Cir.1996). However, in this case, the evidence before the Court shows that William Deans had a 10% shareholder's interest on the date of the contested payments; thus, he would not be deemed to fall under the definition of "affiliate."

er, must exercise sufficient authority over the debtor so as to unqualifiably dictate corporate policy and the disposition of corporate assets." *Id.* In this case, the Court finds that an issue of material fact remains as to whether HRE, through William Deans, exercised sufficient control over Debtor to satisfy the standard set forth above.

The Court finds that issues of material fact remain as to whether the defense to preferential transfers set forth in § 547(c)(4) applies to this case. Therefore, Defendant's motion for summary judgment as to the Third Cause of Action is denied.

### 4. Fraudulent Transfer Pursuant to § 548

In the Fourth Cause of Action, the Trustee asserts that the rental payments to HRE were fraudulent transfers pursuant to § 548. Section 548 provides, in pertinent part:

(a)(1) The trustee may avoid any transfer of an interest of the debtor in property, or any obligation incurred by the debtor, that was made or incurred on or within one year before the date of the filing of the petition, if the debtor voluntarily or involuntarily—

(A) made such transfer or incurred such obligation with actual intent to hinder, delay, or defraud any entity to which the debtor was or became, on or after the date that such transfer was made or such obligation was incurred, indebted; or

(B)(i) received less than a reasonably equivalent value in exchange for such transfer or obligation; and

(ii)(I) was insolvent on the date that such transfer was made or such obligation was incurred, or became insolvent as a result of such transfer or obligation;

(II) was engaged in business or a transaction, or was about to engage in business or a transaction, for which any property remaining with the debt-

or was an unreasonably small capital; or

(III) intended to incur, or believed that the debtor would incur, debts that would be beyond the debtor's ability to pay as such debts matured.

■ Pursuant to § 548, a transfer of interest of Debtor's property may be avoided if it occurred within one year of the filing of the petition, and if one of two requirements is met. First, the transfer may be set aside if it was made "with actual intent to hinder, delay, or defraud" any creditor. The Trustee has presented no evidence of fraudulent intent to sustain a conclusion that the rental payments constituted a fraudulent transfer. To the contrary, the evidence establishes that Debtor occupied the premises for which payments were made and even continued to occupy said premises when it began defaulting on the rent beginning in November of 1996. Therefore, it is clear that Debtor was not fraudulently dispersing its money; rather, it was paying rent for the premises that HRE leased to it. Furthermore, as discussed earlier in the Order, there was no fraudulent motive in connection with the transfer of real estate from Debtor to HRE; and, the fact that the "spin-off" concluded in HRE's owning the premises and leasing them to Debtor was for a good business reason. Therefore, the Court grants summary judgment in favor of Defendant as to § 548(a)(1)(A).

■ However, § 548 provides an alternative means to avoid a fraudulent transfer. Pursuant to § 548(a)(1)(B), the Court has to determine whether the transfer was made for "less than a reasonably equivalent value" and whether the debtor was insolvent on the date that such transfer was made. The Court finds that Defendant did not present any evidence that would tend to prove that the rent paid for the property was reasonable fair market rent; furthermore, he did not present any evidence indicating that,. as of the date of the transfer, Debtor was solvent. The Court finds that Defendant failed to prove

the absence of any genuine issue of material fact as it relates to § 548(a)(1)(B); therefore, summary judgment is denied as to that subsection.

### 5. The Anti–Assignment Statute

In the Fifth Cause of Action, the Trustee alleges that the rent payments constituted an impermissible assignment for the benefit of creditors in violation of § 27–25–10. The statute provides:

> Any assignment by a insolvent debtor of his property for the benefit of his creditors in which any preference or priority is given to any creditor or creditors of the debtor by the terms of the assignment over any other creditor or creditors ..., or in which any provision or disposition of the property so assigned is made or directed other than that it be distributed among all creditor of the insolvent debtor equally, in proportion to the amount of their several demands and without preference or priority of any kind whatsoever ... shall be absolutely null and void and of no effect whatsoever.

The Trustee claims that by making the rent payment to HRE, Debtor gave a preference or priority to HRE over other similarly situated creditors. Three elements must be proven to prevail under the South Carolina Anti–Assignment Act: "(1) an assignment of property (2) by an insolvent debtor (3) that gives a preference or priority to one or more of his creditors over his other creditors." *See, e.g. Campbell v. Heritage Trust Fed. Credit Union (In re Martini)*, C/A No. 96–75484–W; Adv. Pro. No. 98–80091–W (Bankr. D.S.C.11/13/1998) (quoting *In re Hoffman Assoc.*, 16 F.3d 410 (4th Cir.1993)). An assignment is "the act of transferring to another all or part of one's property, interest or rights." *In re Martini*, page —— (quoting Black's Law Dictionary 119 (6th ed.1990)). In this case, the first element of the South Carolina Anti–Assignment Act appears to have been met in as much as it is undisputed that the four rent pay-

ments were made to HRE. A genuine issue of material fact, however, exists as to the remaining requirements of the statute.

The Court finds that summary judgment on the Fifth Cause of Action asserted against HRE is denied.

From the foregoing arguments, it is therefore,

ORDERED THAT, summary judgment as to the First and Second Causes of Action which were asserted against HRE and William and Hope Deans are granted. As a result of the granting of the Motion as to the First and Second Causes of Action, Defendants William Deans and Hope Deans are dismissed from the adversary proceeding.

IT IS FURTHER ORDERED THAT, summary judgment as to the Third and Fifth Causes of Action which were asserted against HRE are denied.

IT IS FURTHER ORDERED THAT, summary judgment as to the Fourth Cause of Action which was asserted against HRE is granted in part and denied in part. The Court grants summary judgment in favor of Defendant as to § 548(a)(1)(A) but denies the Motion as to § 548(a)(1)(B).

**AND IT IS SO ORDERED.**